**INGRAM INDUSTRIES, INC., Plaintiff,**

v.

**John J. NOWICKI et al., Defendants.**

**Civ. No. 79–104.**

United States District Court,
E. D. Kentucky.

Nov. 4, 1980.

James H. Cheek, III, Bass, Berry & Simms, H. Lee Barfield, II, Nashville, Tenn., Ted J. Campbell, Harbison, Kessinger, Lisle & Bush, Robert M. Beck, Jr., Lexington, Ky., for plaintiff.

M. Brooks Senn, D. Paul Alagia, Jr., Barnett & Alagia, Louisville, Ky., Richard A. Getty, John A. West, Greenebaum, Doll & McDonald, Lexington, Ky., for defendants.

## MEMORANDUM OPINION

REED, District Judge.

Ingram Industries, Inc. [Ingram Industries], a corporation located in Nashville, Tennessee, brought this action alleging violations of the Securities Act of 1933 ("1933 Act"), the Securities Exchange Act of 1934 ("1934 Act"), the securities laws of the state of Georgia and common law fraud. The defendants John J. Nowicki and John C. Nowicki ,are residents of Kentucky, while the defendant R. Chandler Nowicki is a resident of Ohio and allegedly transacts business in Kentucky. Defendant Touche Ross & Co. [Touche Ross] is a partnership of certified public accountants that has its principal office in New York and a branch office in Louisville, Kentucky.

The jurisdiction of the Court is allegedly based on Section 22 of the 1933 Act, 15 U.S.C. § 77v (1971), Section 27 of the 1934 Act, 15 U.S.C. § 78aa (1971), 28 U.S.C. § 1332 and "principles of pendent jurisdiction."

The complaint contains six counts, each purporting to state a separate claim. Presently before the Court are the motions of Touche Ross to dismiss and requesting that it be given thirty days after the Court rules on its motion to dismiss in which it shall respond to Ingram's request for production of documents; defendant R. Chandler Nowicki's separate motion to dismiss the complaint as to himself; and Ingram Industries's motion to assign this case for a pretrial conference.

On October 3, 1979 the Court entered an Agreed Order in which Counts II and IV of the complaint were dismissed with prejudice. This memorandum opinion will only address the motion to dismiss of defendant Touche Ross as it applies to the remaining counts.

I

Count I of the complaint alleges that on December 9, 1978 Ingram Industries, in two separate transactions, purchased 4,000 shares representing 40% of the outstanding capital stock of NewEra Resources, Inc. [NewEra], a District of Columbia corporation, for $1,200,000.00. Ingram Industries claims that in connection with these transactions the Nowicki Group, "aided and abetted by defendant Touche Ross" violated Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.-10b–5, promulgated thereunder by the Securities and Exchange Commission. Count I further alleges that the defendants "knowingly or with reckless disregard" committed these acts;

(a) Employed a device, scheme or artifice to defraud

(b) Made untrue statements of material facts and omitted to state material facts necessary in order to make statements made, in light of the cir-

cumstances under which they were made, not misleading and obtained money and property by means of such untrue statements and omissions of material facts; and

(c) Engaged in transactions, practices and a course of business which operated as a fraud and deceit on the plaintiff, all as more fully described below.

In particular paragraph 9 of Count I alleges:

(b) That the financial statements of NewEra, including those by defendant Touche Ross, furnished to the Philadelphia National Bank in connection with a loan of $5.5 million on June 28, 1978 materially overstated the assets and net worth of NewEra by carrying the Whitesburg coal inventory at a value in excess of $600,000 which was stated to represent the lower of cost or market value when the Nowicki Group and Touche Ross knew or should have known that in fact such inventory had little or no market value;

The crux of the complaint as it alleges the participation of Touche Ross is contained in paragraph 12 of Count I which provides:

Defendant Touche Ross served as NewEra's certified public accountants in connection with audits of NewEra's consolidated financial statements for the fiscal years ended September 30, 1977, 1976, and 1975, all of which were part of the financial information furnished to the Philadelphia National Bank in connection with the loan on June 28, 1978. Plaintiff directly and indirectly relied upon the accuracy of such audited statements which have proven to be false and misleading. Defendant Touche Ross knowingly or recklessly in violation of Section 10(b) and Rule 10b–5 aided and abetted the Nowicki Group by permitting their opinion to accompany the false and misleading NewEra financial statements and by improperly in a knowing or reckless manner performing their audit of such financial statements, all to the detriment and loss of the plaintiff.

Count III alleges that the conduct of the defendants as alleged in Count I also forms the basis for liability under Section 17(a) of the 1933 Act, 15 U.S.C. § 77q.

Count V alleges a cause of action for common law fraud, misrepresentation and deceit in that the Nowicki group in conjunction with defendant Touche Ross made false representations of material facts which were known to be false or made without regard to its truthfulness or "recklessly and carelessly regardless of whether the statements were true or false."

The last count of the complaint, VI, is premised upon breach of warranty and breach of contract. Count VI alleges that the Stock Sale and Purchase Agreement executed by the Nowicki Group warranted that the "financial information on NewEra furnished to the Philadelphia National Bank in connection with that certain Loan Agreement dated June 28, 1978 [was] true and correct and represented the financial condition as of that date . . . ." Since the financial information relied upon by the Nowicki Group was allegedly untrue and incorrect it constituted a "breach of contract at common law."

## II

Touche Ross moves the Court to dismiss the complaint against it on the grounds that:

(a) Ingram has failed to state any claim against it upon which relief may be granted, Rule 12(b)(6), Fed.R.Civ.P.,

(b) Ingram has failed to plead with the required particularity, Rule 9(b), Fed.R.Civ.P. and

(c) In the absence of a viable federal claim against it, this Court lacks federal subject matter jurisdiction with respect to the state law claims alleged against it, Rule 12(b)(1), Fed.R.Civ.P.

 In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6), well pleaded facts are taken as true and the

complaint is liberally construed in favor of the party opposing the motion. *Elliot v. Caribbean Utilities Co., Ltd.*, 513 F.2d 1176 (6th Cir. 1975). Moreover, the standard to be utilized in determining whether a complaint fails to state a claim is:

[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 558 F.2d 831, 833 (7th Cir. 1977).

### III

Touche Ross maintains that Count I of the complaint fails to state a claim upon which relief can be granted because (1) it fails to allege scienter required by *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); (2) it fails to allege the elements necessary to establish a cause of action for "aider and abettor" liability; and (3) it fails to comply with Rule 9(b), Fed.R.Civ.P. (Memorandum of Touche Ross, p. 9, 10).

In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976) the Supreme Court held that a private cause of action under § 10(b) of the 1934 Act and Rule 10b–5 will not lie "in the absence of any allegations of 'scienter'–intent to deceive, manipulate or defraud" on the part of the defendant. While the Court held that mere negligence was not actionable under § 10(b) and Rule 10b–5 it left open the question of whether recklessness satisfies the scienter requirement:

[T]he term 'scienter' refers to a mental state embracing intent to deceive, manipulate, or defraud. In certain areas of the law recklessness is considered to be a form of intentional conduct for purposes of imposing liability for some act. We need not address here the question whether, in some circumstances, reckless behavior is sufficient for civil liability under § 10(b) and Rule 10b–5.

*Id.* 425 U.S. at 193 n. 12, 96 S.Ct. at 1381 n. 12.

In *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017 (6th Cir. 1979) the Sixth Circuit Court of Appeals specifically answered this question holding that "recklessness" satisfies the § 10(b) and Rule 10b–5 scienter requirement. The Court in *Mansbach* expressed agreement with the standard enunciated by the Seventh Circuit Court of Appeals in *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, *cert. denied*, 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977). The Seventh Circuit there held:

'[R]eckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'

*Id.* 553 F.2d at 1045, *quoting Franke v. Midwestern Oklahoma Development Authority*, 428 F.Supp. 719, 725 (W.D.Okla. 1976). The standard adopted in *Mansbach* has been followed in *Ohio Drill & Tool Co. v. Johnson*, 625 F.2d 738 (6th Cir. 1980).

The allegations contained in Count I essentially track the statutory language contained in Section 10(b) of the 1934 Act and Rule 10b–5. In particular, Count I alleges that the Nowicki defendants "aided and abetted by defendant Touche Ross ... directly and indirectly and knowingly or with reckless disregard" violated Rule 10b–5. Count I further alleges that defendant Touche Ross "knew or should have known" that the Whitesburg coal inventory "had little or no value." Paragraph 12 of Count I alleges: "Defendant Touche Ross knowingly or recklessly in violation of Section 10(b) and Rule 10b–5 aided and abetted the Nowicki Group by permitting their opinion to accompany the false and misleading NewEra financial statements and by improperly in a knowing or reckless manner preforming their audit of such financial statements ...."

■ The Court is of the opinion that the above allegations in Count I, taken as a whole, sufficiently allege "recklessness" on the part of Touche Ross to fulfill the scienter requirement of *Hochfelder.* Though some of the allegations define the activities of Touche Ross in terms of negligence and others allege recklessness in a conclusionary fashion we cannot rule, in accordance with a motion to dismiss, that it appears beyond a doubt that the plaintiff can prove no set of facts in support of his § 10(b) and Rule 10b–5 claim which would entitle him to relief. *Conley v. Gibson, supra; Mansbach, supra,* at 1026–27.

Although the complaint may satisfy the scienter requirement of § 10(b) and Rule 10b–5, it may be, as Touche Ross claims, that it does not satisfy the requirement of particularity of Fed.R.Civ.P. 9. *Weinberger v. Kendrick,* 432 F.Supp. 316 (S.D.N.Y. 1977). This rule requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) has been applied to § 10(b) suits to minimize "strike suits" and to protect accountants and other professionals from unfounded complaints alleging fraud. *Id.; Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 522 n.4 (S.D.N.Y.1977); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1296 (1969). However, Rule 9(b) must be read in conjunction with the simplicity sought in Rule 8, which requires: (a)(2) "a short and plain statement of the claim showing that the pleader is entitled to relief." 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1298 (1969).

■ A complaint alleging a securities fraud violation must identify, "*inter alia,* the misrepresentations which were allegedly made, and the manner in which they are considered to be false, and it must set forth facts from which an inference of fraud by a given defendant may be drawn." *Jacobson, supra* at 522 (footnotes omitted). The complaint of Ingram Industries, in particular paragraphs 9 and 12 of Count I, sets forth the facts which form the basis for their § 10(b)/Rule 10b–5 claim. Paragraph 12 states that Touche Ross, audited the financial statements of NewEra for 1975, 1976 and 1977 which were relied upon by Ingram Industries and which have allegedly been proven to be false and misleading. Furthermore, Ingram Industries alleges that Touche Ross "knowingly or recklessly" audited the financial statements and allowed its opinion to accompany the false and misleading financial statements of NewEra. Paragraph 9(b) alleges that Touche Ross "materially overstated the assets and net worth of NewEra by carrying the Whitesburg coal inventory at a value in excess of $600,000 ... when the Nowicki Group and Touche Ross knew or should have known that in fact such inventory had little or no value." Count I specifies the financial statements alleged to be misleading, the manner in which they are alleged to be misleading and the categories of information that are alleged to be false and misleading. *Oleck v. Fischer,* 401 F.Supp. 651 (S.D.N.Y.1975). More than this is not required by Fed.R.Civ.P. 9(b).

The statement of the Second Circuit Court of Appeals in *Felton v. Walston and Co., Inc.,* 508 F.2d 577, 581–82 (2 Cir. 1974) is equally applicable here:

While the allegations here are not as specific as might be desired.... They cannot be characterized as merely conclusory since they clearly are much more than a bald assertion that [Touche Ross] engaged in fraudulent acts. It may well be that plaintiffs have no claim against [Touche Ross] but the proper manner in which to determine whether a claim exists is to require an answer, and, if necessary, a trial of those issues. This result is especially appropriate since in applying rule 9(b) we must not lose sight of the fact that it must be reconciled with rule 8 which requires a short and concise statement of claims. See 5 C. Wright & A. Miller, Federal Practice & Procedure § 1298, at 406–410 (1969).

We realize that one purpose of rule 9(b) is to protect reputations of accountants and other professionals from scurrilous and baseless allegations of fraud....

However, rule 9(b) does not insulate professionals from claims of fraud where a complaint alleges the fraudulent acts with particularity, and this complaint does so. In any event, defendants may, in appropriate situations, be spared the expense and delay of a trial by moving for summary judgment.

The final objection of defendant Touche Ross to Count I is that it does not state a cause of action for aider and abettor liability. The Supreme Court in *Ernst & Ernst v. Hochfelder* expressly refused to decide what constitutes aider and abettor liability when they stated:

> In view of our holding that an intent to deceive, manipulate, or defraud is required for civil liability under § 10(b) and Rule 10b–5, we need not consider whether civil liability for aiding and abetting is appropriate under the section and the Rule nor the elements necessary to establish such a cause of action.

*Id.* 425 U.S. at 191 n. 7, 96 S.Ct. at 1380 n. 7.

The Second Circuit Court of Appeals in post–*Hochfelder* cases has adopted the position that § 10(b) and Rule 10b–5 do permit the imposition of aider and abettor liability. *Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38, 44 (2 Cir. 1978), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *Hirsch v. duPont,* 553 F.2d 750, 759 (2 Cir. 1977). In a pre–*Hochfelder* case, *S. E. C. v. Coffey,* 493 F.2d 1304 (6 Cir. 1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed. 837 (1975), the Sixth Circuit found that such liability was appropriate. Thus, it is logical to presume that, absent some indication by the Supreme Court to the contrary, the Sixth Circuit will still impose aider and abettor liability.

■ Since *Hochfelder* held that scienter is a requirement for a § 10(b) and Rule 10b–5 cause of action, scienter "also establishes the standard for aiding and abetting liability." *Rolf, supra,* at 44. The Court in *Rolf* also held that "recklessness" satisfies the scienter requirement, "where, as here, the alleged aider and abetter owes a fiduciary duty to the defrauded party." *Id.* (footnote omitted). The issue then is whether "recklessness" will satisfy the scienter requirement in this case where the alleged aider and abettor owes no fiduciary duty of disclosure or loyalty to the allegedly defrauded party. It is the opinion of the Court that no greater or lesser standard of scienter than that of "recklessness" is required since the Sixth Circuit observed:

> The holding in *Rolf* was limited to the facts of that case, *viz.,* a defendant who owed a fiduciary duty to the plaintiff. We see no reason to impose such a limitation.

*Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1024 n. 22 (6th Cir. 1979). Therefore, the Court will determine whether Count I states a cause of action for aider and abettor liability using the standard of "recklessness"–"highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Mansbach, supra,* at 1025.

The elements necessary for aider and abettor liability have been described as:

> Without meaning to set forth an inflexible definition of aiding and abetting, we find that a person may be held as an aider and abettor only if some other party has committed a securities law violation, if the accused party had general awareness that his role was part of an overall activity that is improper, and if the accused aider–abettor knowingly and substantially assisted the violation.

*S. E. C. v. Coffey,* 493 F.2d 1304, 1316 (6th Cir. 1974) (footnote omitted). *See also Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 94–5 (5th Cir. 1975); *Morgan v. Prudential Group, Inc.,* 81 F.R.D. 418, 424 (S.D.N.Y.1978); *S. E. C. v. National Student Marketing Corp.,* 402 F.Supp. 641 (D.D.C.1975).

For the purposes of this motion, Touche Ross concedes that Count I sufficiently alleges a securities law violation on the part of the Nowicki Group, thus satisfying the first element of aiding and abetting. The second element is whether Ingram sufficiently alleges that Touche Ross had a general awareness that its role was part of an overall activity that would constitute a se-

curities law violation, that it acted with scienter—recklessness. *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 424 F.Supp. 1021, 1043 (S.D.N.Y.1977).

The principal contention of Touche Ross is that: "there is not one allegation that Touche Ross had knowledge of the primary fraud alleged to have been perpetrated upon Ingram by the Nowicki Group or of any facts which would impute knowledge of such fraud to it." (Memorandum of Touche Ross, p. 17). Count I alleges that Touche Ross audited NewEra's financial statements for the fiscal years ending September 30, 1977, 1976 and 1975; that Touche Ross "knowingly or recklessly ... aided and abetted the Nowicki Group by permitting their opinion to accompany the false and misleading NewEra financial statements and by improperly in a knowing or reckless manner performing their audit of such financial statements . . . . " In particular, Ingram Industries alleges that Touche Ross "knew or should have known" that the Whitesburg coal inventory, which was valued in the financial statements audited by Touche Ross in excess of $600,000, had little or no market value. These allegations against Touche Ross are adequate to satisfy the second element of the *Coffey* test since they state how the participation of Touche Ross assisted the Nowicki group in allegedly defrauding Ingram Industries. It puts Touche Ross on notice as to the particular false item in NewEra's financial statement, the Whitesburg coal inventory, which if proven, could conceivably demonstrate highly unreasonable conduct which was an extreme departure from the standards of ordinary care. *Mansbach, supra.*

The third requirement of *Coffey* is that Touche Ross knowingly and substantially assisted the Nowicki Group in a securities law violation. The above allegation against Touche Ross also supports the third requirement of *Coffey*. Since it is established, for the purposes of this motion, that the Nowicki Group violated the securities laws and that Touche Ross's conduct was reckless in that it knew or should have known that its audited financial statement overstated the Whitesburg coal inventory by $600,000, it

would logically follow, that Touche Ross substantially assisted the Nowicki Group in its alleged fraud on Ingram Industries. Therefore, the alleged active participation in the preparation and issuance of false and materially misleading financial statements sufficiently alleges a securities law violation for aider and abettor liability against Touche Ross.

### IV

In Count III of its complaint, Ingram Industries alleges that the conduct of Touche Ross as alleged in Count I also forms the basis for liability under § 17(a) of the 1933 Act. Section 17(a) of the 1933 Act, 15 U.S.C. § 77q, provides:

> It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
>
> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (3) to engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser.

The Supreme Court, however, has yet to determine whether § 17(a) of the 1933 Act creates an implied right of action for civil liability. *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 557 n.9, 99 S.Ct. 790, 795 n.9, 58 L.Ed.2d 808 (1979). Although the Sixth Circuit has not addressed this problem, the other federal courts which have done so are split on this question. *Compare Kirshner v. United States*, 603 F.2d 234 (2d Cir. 1978) (private cause of action implied), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979); [and] *Newman v. Prior*, 518 F.2d 97

(4th Cir. 1975) (private cause of action implied); *with Shull v. Dain, Kalman & Quail, Inc.*, 561 F.2d 152 (8th Cir. 1977) (private cause of action not implied).

In determining whether a private cause of action for damages may be implied from the statutory language of § 17(a), the Supreme Court has considered four factors:

First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' –that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted). However relevant these four factors are in determining whether a private damage remedy is implied in a statute, "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). Since the question of the existence of an implied cause of action is basically one of statutory construction, we must begin our analysis with the language of the statute itself. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 244–45, 62 L.Ed.2d 146 (1979) [hereinafter cited as *TAMA v. Lewis*]; *Touche Ross, supra* at 568, 99 S.Ct. at 2485.

Section 17(a) of the 1933 Act broadly proscribes fraudulent practices by "any person in the offer and sale of any securities," making it unlawful for any person "to employ any device, scheme, or artifice to defraud, or ... to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or ... to engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser." Section 17(a) simply proscribes certain conduct, and by its express terms, does not create a private cause of action for damages. The only legislative history which would be relevant to this issue is contained in *Securities Act of 1933: Hearings on S. 875 Before the Senate Comm. on Banking and Currency*, 73d Congress, 1st Sess. 114 (March 31–April 8, 1933) wherein it is stated:

Then on page 24 we have the fraud section, section 13, [enacted as § 17(a)] line 18, where they use any device, any scheme or artifice to defraud or obtain money or the property by reason of any false pretense, representation, and so forth. And when such a situation as that arises the Commission can have a hearing, gather evidence, and can turn it over to the Attorney General, and then he can proceed in his discretion.

A persuasive argument against finding an implied cause of action was made in *Dyer v. Eastern Trust and Banking Co.*, 336 F.Supp. 890, 904 (D.Me.1971):

The argument, based upon both legislative history and statutory construction, is persuasive that Section 17(a) was intended only to afford a basis for injunctive relief and, if wilfulness is present, for criminal liability, and was not intended to provide a civil remedy for damages supplementing that afforded by Section 12(2). It is cogently stated by Professor Loss:

In November 1933 Commissioner Landis of the Federal Trade Commission, who had played a prominent part in the drafting of the statute, stated in an address:

The suggestion has been made on occasion that civil liabilities arise also from a violation of Section 17, the first subsection of which makes unlawful the circulation of falsehoods and un-

truths in connection with the sale of a security in interstate commerce or through the mails. But a reading of this section in the light of the entire Act leaves no doubt but that violations of its provisions give rise only to a liability to be restrained by injunctive action or, if willfully done, to a liability to be punished criminally.

Although this was said many years before the *Kardon* [*v. National Gypsum Co.*, 69 F.Supp. 512 (1946)] case, there is nothing novel about the doctrine of implied tort liability based on violation of a statute. The question is simply whether there is the same justification for implying such liability under the 1933 act as there is under the 1934 act. It is one thing to imply a private right of action under § 10(b) or the other provisions of the 1934 act, because the specific liabilities created by §§ 9(e), 16(b) and 18 do not cover all the variegated activities with which that act is concerned. But it is quite another thing to add an implied remedy under § 17(a) of the 1933 act to the detailed remedies specifically created by §§ 11 and 12. The 1933 act is a much narrower statute. It deals only with disclosure and fraud in the sale of securities. It has but two important substantive provisions, §§ 5 and 17(a). Noncompliance with § 5 results in civil liability under § 12(1). Faulty compliance results in liability under § 11. And § 17(a) has its counterpart in § 12(2). It all makes a rather neat pattern. Within the area of §§ 5 and 17(a), §§ 11 and 12 (unlike §§ 9(e), 16(b) and 18 of the 1934 act) are all-embracing. This is not to say that the remedies afforded by §§ 11 and 12 are complete. But the very restriction contained in those sections amid the differences between them—for example, the fact that § 11 but not § 12 imposes liability on certain persons connected with the issuer without regard to their participation in the offering and the fact that § 12(2) does not go so far in relation to § 17(a) as § 12(1) goes in relation to § 5—make it seem the less justifiable to permit plaintiffs to circumvent the limi-

tations of § 12 by resort to § 17(a). Particularly is this so in view of the fact that § 11, together with the statute of limitations in § 13, was actually tightened in the 1934 amendment to the Securities Act. 3 Loss, *Securities Regulation* 1784–85 (2d ed. 1961).

Section 17(a), therefore, does not create a civil damage claim for its violation. "If monetary liability to a private plaintiff is to be found, it must read it into the Act. Yet it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *TAMA v. Lewis, supra,* at 19, 100 S.Ct. at 247. If Congress had wanted to create within § 17(a) a civil remedy for damages it could have expressly authorized such a remedy. *See* Securities Act of 1933, §§ 11, 12 and 15, 15 U.S.C. §§ 77k, 77*l* and 77*o*; Securities Exchange Act of 1934, §§ 9, 16, 18 and 20, 15 U.S.C. §§ 78i, 78p, 78r and 78t. The fact that the Supreme Court has held that § 10(b) of the 1934 Act and Rule 10b–5 create private rights of action for which damages may be recovered, *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 13 nn. 9 & 10, 92 S.Ct. 165, 169 nn. 9 & 10, 30 L.Ed.2d 128 (1971), offers no support to the plaintiff here because the Court has since stated: "But we recently have stated that in *Superintendent* this Court simply explicitly acquiesced in the 25–year–old acceptance by the lower federal courts of an implied action under § 10(b). *Cannon v. University of Chicago,* 441 U.S., at 690–693, n.13, 99 S.Ct. 1954–55 n.13; see *Ernst & Ernst v. Hochfelder, supra,* 425 U.S. at 196, 96 S.Ct. at 1382; *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 730, 95 S.Ct. 1917, 1922, 44 L.Ed.2d 539 (1975)." *Touche Ross, supra,* at 577 n.19, 99 S.Ct. at 2490 n.19.

The decision of this Court that § 17(a) does not create a private cause of action in favor of anyone simply complies with recent Supreme Court decisions dealing with the issue of whether particular statutes imply civil damage claims when none is expressly provided for in the statute. In *Touche*

*Ross,* the Supreme Court looked to the statutory language and the legislative history to determine whether Congress intended to create, either expressly or implicitly, a private cause of action in § 17(a) of the *1934 Act.* Since the statute, by its express terms, did not provide for a private cause of action and the legislative history was entirely silent on this question, the Court held that the Congress did not intend to create a private cause of action in § 17(a). Having made this decision, the Court then declined to follow *J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) to determine whether the "remedial purposes" of the 1934 Act justified the finding of a private cause of action. "To the extent our analysis in today's decision differs from that of the Court in *Borak,* it suffices to say that in a series of cases since *Borak* we have adhered to a stricter standard for the implication of private causes of action, and we follow that stricter standard today." *Touche Ross, supra,* at 578, 99 S.Ct. at 2490. Similarly, in *TAMA v. Lewis,* the Court followed the stricter standard by looking solely to the statutory language and the legislative history to determine the critical issue of whether there was any evidence of congressional intent to create a private cause of action in § 215 or § 206 of the Investment Advisers Act of 1940. In that case the Court held that § 215 gave rise to a limited private right of action for equitable relief, but that § 206 did not impose any private damage remedy.

The decision of the Court is also in accord with the Sixth Circuit's interpretation of these Supreme Court cases. In *Taylor v. Brighton Corp.,* 616 F.2d 256, 257 (6th Cir. 1980), the Court was presented with the question of "whether the Occupational Safety and Health Act, 29 U.S.C. §§ 651–678, creates an implied private right of action whereby an employee discharged in retaliation for reporting safety violations to OSHA may maintain a suit against his former employer." In affirming the district court's decision that it does not, the Court's analysis centered on the inquiry: "Did Congress intend to create a private right of action in this situation?" *Id.* at 259. The Court then looked to the statutory language in answering this question:

> Two points are evident from the statutory language. First, Congress nowhere mentioned private suits to enforce § 11(c). Second, Congress explicitly provided an alternative means of redressing § 11(c) violations. 'In view of these express provisions for enforcing the [statutory prohibition], it is highly improbable that "Congress absentmindedly forgot to mention an intended private action."' *TAMA v. Lewis, supra,* 444 U.S. at 20, 100 S.Ct. at 247 (*quoting Cannon v. University of Chicago, supra,* 441 U.S. at 742, 99 S.Ct. at 1981 (Powell, J., dissenting)).

*Id.* This analysis is equally applicable to § 17(a) since the statutory language does not evidence any Congressional intent to provide a private suit for damages, and as Professor Loss has indicated Congress did provide an alternative means of securing relief for its violation.

Accordingly, the Court holds that § 17(a) of the 1933 Act, 15 U.S.C. § 77q, does not expressly or by implication provide for a private cause of action. Count III of the plaintiff's complaint will be dismissed as to all defendants.

### V

Count V of the complaint alleges common law fraud, misrepresentation and deceit, while Count VI alleges breach of warranty and breach of contract under the Stock Sale and Purchase Agreement between the Nowicki Group and Ingram. Touche Ross initially argues that "principles of pendent jurisdiction" will not support these two counts. Since the Court has held that Ingram's complaint presents viable independent federal claims, it is indisputable that the Court can exercise its jurisdiction to dispose of these state law claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Touche Ross further argues that Count V should be dismissed since it does not allege the law of the jurisdiction under which it seeks to recover for common law

fraud. It is asserted, in the alternative, that Count V fails to particularize fraud as required by Rule 9(b) or to properly plead scienter. This defense is stated without the benefit of explanation or citation. A cause of action for fraud is stated where "the plaintiff alleges a representation, its falsity, its materiality, the speaker's knowledge of its falsity and his intent that it should be acted upon and the other party's reliance upon the truth of the representation and his subsequent injury." *MacAndrews & Forbes Co. v. American Barmag Corp.*, 339 F.Supp. 1401, 1404 (D.S.C.1972). The allegations contained in Count V clearly state a cause of action for fraud.

Touche Ross claims that the last count, VI, of the complaint is based solely on the alleged breach of the Stock Sale and Purchase Agreement executed between the Nowicki Group and Ingram and apparently seeks only to impose liability on the Nowicki Group. Since Count VI does not mention Touche Ross, and Ingram in its memorandum in opposition to the motion to dismiss filed by Touche Ross does not respond to this argument, it is apparent that this count was not intended to impose liability upon Touche Ross. Therefore, Count VI will be dismissed as to Touche Ross.