Simon A. BASILE, et al., Plaintiffs,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al., Defendants.

Allen G. ZARING, Plaintiff,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al., Defendants.

John E. KUHN, et al.

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al., Defendants.

Wayne L. DICKERHOFF, et al., Plaintiffs,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al., Defendants.

Nos. C–1–82–740, C–1–82–748, C–1–82–774 and C–1–82–857.

United States District Court, S.D. Ohio, W.D.

Nov. 29, 1982.

Michael G. Kohn, Kohn & Helmer, Cincinnati, Ohio, for Basile, Zaring, Kuhn and Chism.

Timothy L. Bouscaren, Walker, Chatfield & Doan, Cincinnati, Ohio, for Basile, Dicherhoff, Murphy, Jameson, Slagle, Homoelle and Peck.

Michael F. Haverkamp, Cincinnati, Ohio, for Merrill Lynch, Pierce, Fenner & Smith, Inc.

Michael G. Long, Columbus, Ohio, for Rex Railways, Inc., in all cases.

Thomas B. Ridgley, Columbus, Ohio, for Rex Railways, Inc. in No. C–1–82–774.

SPIEGEL, District Judge:

This matter came on for consideration of defendant Rex Railway's motion to dismiss (doc. 7), plaintiffs' memorandum in opposition (doc. 11), and defendant's reply memorandum (doc. 13).[1] For reasons to be discussed, we hereby deny defendant's motion.

These actions for fraud were brought pursuant to section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), rule 10b–5, 17 C.F.R. § 240.10b–5, and the common law of the state of Ohio. All but one of the plaintiffs in *Dickerhoff* also assert a claim under section 12(2) of the Securities Act, 15 U.S.C. § 77*l*(2).

Plaintiffs allege fraud in the offer and sale of boxcar management programs devised by defendant Rex Railway and sold through defendant Merrill Lynch, Pierce, Fenner & Smith. By order of the Court (doc. 14), these actions have been consolidated for pretrial purposes only.

Defendant Rex Railway moved to dismiss all but the 12(2) claims pursuant to Rule 12(b), Fed.R.Civ.P., on the grounds that there is no implied right of action under section 17(a), that there is no implied right of action under section 10(b) where the federal securities acts expressly provide a remedy, and that even if plaintiffs have any implied rights of action their claims are barred by the statute of limitations. Although we agree that there is no implied private rights of action under section 17(a), we find that there is such a right under section 10(b) and that the pleadings do not conclusively show that the plaintiffs' claims are barred by the statute of limitations. Accordingly, we deny defendant's motion.

As a preliminary matter we note that with respect to the implied causes of action we need not determine at this stage of the litigation what law governs. Defendant maintains that the contracts between plaintiffs and defendant Rex Railway provide that the agreements are to be governed by New Jersey law. The result, however, is the same whether we apply the law of the Third or the Sixth Circuit as neither of those Circuits has decided the particular issues presented by the instant cases.

### I. Introduction

Defendant's motion addresses two sections of the federal securities acts, section 17(a) of the Securities Act of 1933 and section 10(b) of the Securities Exchange Act. Both of these sections are anti-fraud provisions; neither provides an express private right of action.

The Supreme Court has instructed us that the 1933 and 1934 acts are "interrelated components of the federal regulatory scheme governing transactions in securities." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 206, 96 S.Ct. 1375, 1387, 47 L.Ed.2d 668 (1976). Although we must, therefore, consider the relationships between the Acts, we should also be guided by the fact that the Acts focus on different areas of securities regulation and are enacted for different purposes.

The Securities Act of 1933, 15 U.S.C. § 77a et seq., regulates public offerings of securities. It forbids offers and sales of securities not registered with the Securities and Exchange Commission, with the exception of certain enumerated exempt securities. The Act also prohibits fraud or deceit in the offer and sale of securities. The basic purpose of the Act is to assure that the public has access to adequate reliable information about any securities offered to the public.

The Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., a much broader statute, extended federal regulation to securities already issued. Unlike the Securities Act which focuses on a single provision and has been amended only slightly, the 1934 Act has multiple provisions covering several areas of regulation and has been amended

---

1. Docket numbers are those in Basile, No. C–1–82–740. *Identical motions, memoranda contra* and reply memoranda were filed in each of these consolidated cases.

substantially. In addition to establishing the Securities Exchange Commission (SEC), the 1934 Act, *inter alia*, imposes disclosure requirements on publicly held corporations, prohibits various manipulative or deceptive practices in connection with the purchase or sale of securities, restricts the amount of credit that can be extended for the purchase of securities, imposes registration requirements or brokers and dealers, and establishes SEC registration and supervision of national security exchanges and other entities involved in securities transactions. The 1934 Act, as amended, is clearly a far more comprehensive statute than the 1933 legislation.

Our determination of whether a private right of action can be implied under section 17(a) and whether there is a private right of action under section 10(b) for conduct for which the securities acts provide an express remedy is premised on the interrelatedness of the two acts as well as the distinct nature of each of the acts. Furthermore, we emphasize that congressional intent is the key to both issues. Both issues involve implied rights—the first raises the existence of an implied right of action; the second, the scope of an already established implied right. As will be discussed, the Supreme Court. has made it emphatically clear that no private right of action shall be implied without a finding that Congress intended the implication of such a right. We conclude that this same test must be applied where the issue is the scope of a recognized implied right.

## II. Implied Rights of Action

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) the United States Supreme Court held that four factors must be considered in determining whether to imply a private cause of action from a general prohibition contained in a federal statute.

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to

create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (emphasis original, citations omitted). In subsequent cases, however, the Court has adopted a more stringent standard in which the central inquiry goes to congressional intent. Stating that the four *Cort* factors are not entitled to equal weight, the Court concluded that three of those factors—"the language and focus of the statute, its legislative history, and the purpose of the statute—are ones traditionally relied upon in determining legislative intent." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). In another implied action case, the Court insisted that close attention be paid to the "elemental cannon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979) (*TAMA* ).

Only last term, the Supreme Court emphasized again that the inquiry focuses primarily on congressional intent. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* —— U.S. ——, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). The majority and the four dissenters agreed that failure to provide an express private right of action is not necessarily inconsistent with congressional intent to provide such a right. In holding that an investor may maintain an action against a commodities broker for violating an antifraud provision of the Commodities Exchange Act, 7 U.S.C. §§ 1 *et seq.,* the majority reasoned that to determine intent where a statute is silent on the issue of a private cause of action, the court must begin by considering the state of the law at the time the legislation was enacted.

More precisely we must examine Congress' perception of the law that it was shaping or reshaping. When Congress enacts new legislation, the question is whether Congress intended to create a private remedy as a supplement to the express enforcement provisions of the statute. When Congress acts in a statutory context in which an implied private remedy has already been recognized by the courts, however, the inquiry logically is different. Congress need not have intended to create a remedy since one already existed; the question is whether Congress intended to preserve the pre-existing remedy.

—— U.S. at ——, 102 S.Ct. at 1839 (footnote omitted).

The analysis which we must undertake in determining whether Congress intended that a private right of action be implied is clear. *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981); *California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981); *TAMA,* 444 U.S. at 15, 100 S.Ct. at 245; *Redington,* 442 U.S. at 568, 99 S.Ct. at 2485. We must, of course, begin with the language of the statute itself, asking what that language reveals about the purpose of the statute. Secondly, we must examine the legislative history which under *Curran* now includes the state of the law at the time the legislation was enacted. And finally we must examine the statutory scheme for indications of congressional intent, keeping in mind the Supreme Court's reluctance to imply a private right of action broader than an express remedy provided by Congress. *Redington,* 442 U.S. at 572, 99 S.Ct. at 2487. In sum, under *TAMA,* 444 U.S. at 23–24, 100 S.Ct. at 249, our analysis is concluded once we determine from the statutory language, the legislative history, and the statutory context of the section at issue, whether Congress intended that a private right of action be implied. Once legislative intent is established, there is no need to examine each of the four *Cort* factors. *Curran,* —— U.S. at ——, 102 S.Ct. at 1844.

We note further that in applying this analytical framework to cases in which plaintiffs assert a private right of action under the federal securities laws, the Supreme Court has generally refused to find such a right—with the obvious exception of section 10(b) of the Securities Exchange Act. In *Piper v. Chris-Craft Industries,* 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124 (1977), the Court held that an unsuccessful tender offeror has no private right of action under section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e), finding that the legislative history revealed that Congress' intent in enacting section 14(e) was to protect the investor confronted with a tender offer, not the offeror. The Court found further that application of the *Cort* test lead to the same conclusion. *Id.* at 37–41, 97 S.Ct. at 947–949. The *Redington* Court concluded that there is no private cause of action under section 17(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78q(a), noting that the statute rather than proscribing conduct as unlawful places an affirmative duty upon broker-dealers to keep records and that section 17(a) is flanked by provisions expressly granting private rights of action. 442 U.S. at 569, 571–72, 99 S.Ct. at 2485, 2486–87. In *TAMA,* 444 U.S. at 19–24, 100 S.Ct. at 246–249, the Court found no implied right of action under section 206 of the Investment Advisors Act, 15 U.S.C. § 80b–6, noting that other sections of the act provide for criminal penalties as well as civil action by the SEC and other administrative sanctions. The Court also doubted that Congress forgot to include a private right of action it meant to confer. *Id.* 430 U.S. at 20–21, 97 S.Ct. at 938–939.

Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and rule 10b–5, 17 C.F.R. § 240.10b–5, have, however, not been subjected to this stringent analysis. A private right of action under section 10(b) was implied as early as 1946, *Kardon v. National Gypsum Co.,* 69 F.Supp. 512 (E.D. Pa.1946), and accepted without discussion by the Supreme Court in 1971, *Superintendent of Insurance v. Bankers Life & Casual-*

*ty Co.,* 404 U.S. 6, 13 n.9, 92 S.Ct. 165, 169 n.9, 30 L.Ed.2d 128 (1971). But it is important to note that the Supreme Court has pointed out that its own acceptance of a section 10(b) implied right of action occurred twenty-five years after *Kardon* with almost ·no discussion and in the context of almost unanimous agreement among the Circuits that such a right should be implied. *Blue Chip Stamps v. Manor Drug Store,* 421 U.S. 723, 730, 95 S.Ct. 1917, 1922, 44 L.Ed.2d 539 (1975). Even despite this pragmatic acceptance of an implied right of action under section 10(b), *Redington,* 422 U.S. at 577 n.19, 99 S.Ct. at 2490 n.19, the Court has begun to limit that section's applicability. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (proof of scienter is required in a private suit under rule 10b–5); *Blue Chip Stamps,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (stock offering offerees have no rule 10b–5 cause of action). Significantly, in those cases the Court has emphasized congressional intent in establishing these limitations on the scope of a section 10(b) private right of action. *Hochfelder,* 425 U.S. at 201–11, 96 S.Ct. at 1384–1389; *Blue Chip Stamps,* 421 U.S. at 752–54, 95 S.Ct. at 1933–34 and *passim.*

### III. Implied Right of Action Under Section 17(a), 15 U.S.C. § 77q(a)

■ We find that Congress did not intend that a private right of action be implied under section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). Neither the language of this antifraud provision nor the legislative history allow us to conclude that Congress intended to create such a right. The statutory context in which the section appears, including the limited scope of the 1933 Act when contrasted with the 1934 Act, supports this conclusion.

Section 17(a) makes it unlawful for any person to use fraud in the offer or sale of any security. On its face it does not provide a private right of action.

Defendant Rex Railways argues that the rigorous analysis now required by the Supreme Court dictates a finding that Con-

gress did not intend to imply a private right of action under section 17(a). Defendant also notes that district courts within the Third and Sixth Circuits have concluded that section 17(a) does not provide such a private right, citing *Hill v. Der,* 521 F.Supp. 1370 (D.Del.1981), and *Ingram Industries, Inc. v. Nowicki,* 502 F.Supp. 1060 (E.D.Ky. 1980). Plaintiffs, however, respond that a private right of action under section 17(a) is well-established in the Circuits, citing among others *Herm v. Stafford,* 663 F.2d 669 (6th Cir.1981); *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 815 (9th Cir.1981); *Kirshner v. United States,* 603 F.2d 234, 240–41 (2d Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979); *Lincoln National Bank v. Herber,* 604 F.2d 1038, 1040 n.2 (7th Cir.1979); *Cooke v. Avien, Inc.,* 573 F.2d 685 (1st Cir. 1978); and *Newman v. Prior,* 518 F.2d 97 (4th Cir.1975).

We note at the outset that plaintiffs overstate the matter. It is true that the Second, Fourth, Seventh and Ninth Circuits have held that section 17(a) provides a private right of action. They, however, did so with a minimum of discussion; the most marked characteristic of all these decisions is the total absence of the analysis mandated by the Supreme Court for any case raising the issue of whether Congress intended that a private cause of action be implied. Furthermore, plaintiffs misread the holdings of *Herm* and *Cooke.* In *Herm,* the Sixth Circuit "assumed without deciding" the existence of a private right of action since that issue was not raised by the parties. 663 F.2d at 678 n. 12. In *Cooke,* the First Circuit in dictum stated that the same principles which barred plaintiff's claims under section 12(2) of the Securities Act as not filed within the statute of limitations would bar suit under section 17(a). 573 F.2d at 693 n. 30. Finally, the Fifth and the Eighth Circuits have held that section 17(a) does *not* create an implied right of action. *Landry v. All American Assurance Co.,* 688 F.2d 381 (5th Cir.1982); *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152 (8th Cir.1978) *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792. The Eighth

Circuit specifically held that the private remedy of a purchaser lies in section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*, not in section 17(a). 688 F.2d at 155. The Fifth Circuit is the only federal appellate court to date to address this issue within the framework established by the Supreme Court in *Cort* and its progeny.[2]

Because neither the Third nor the Sixth Circuit has decided this issue, we are compelled to consider this question in light of Supreme Court decisions.

We begin with the language of section 17(a) which provides:

> (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
>
> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a). On its face, the statute is a general prohibition of fraudulent practices and does not create a private right of action. Subsequent sections do, however, allow for equitable and criminal causes of action. 15 U.S.C. § 77t (injunctions and SEC prosecutions); 15 U.S.C. § 77x (penalties). Clearly the purpose of section 17(a) is to prevent fraud in the offer and sale of securities, not to create a remedy for one injured by fraud.

Investigation of the legislative history similarly reveals no congressional intent to create an implied right of action. The Securities Act of 1933, including section 17(a),

was Congress' first approach to federal regulation of public offerings of securities. Thus, unlike the situation in *Curran,* there was no statutory context in which an implied right of action had been recognized. The question is, therefore, "whether Congress intended to create a private remedy as a supplement to the express enforcement provisions of the statute." *Curran,* 102 S.Ct. at 1839.

The legislative history is meager. However, in listing the sections of the Securities Act of 1933 that create and define civil liabilities, the House Committee Report noted only sections 11 and 12, adding that "[t]o impose a greater responsibility ... would unnecessarily restrain the conscientious administration of honest business with no compensating advantage to the public." H.R.Rep. No. 85, 73d Cong., 1st Sess. 9–10 (1933). *See also Ruder, Civil Liability Under Rule 10b–5: Judicial Revision of Legislative Intent?* 57 Nw.U.L.Rev. 627, 656–57 (1963).

We further find that the structure of the Securities Act itself is convincing evidence that Congress did not intend to create a private right of action under section 17(a). Professor Louis Loss has made this argument most persuasively:

> It is one thing to imply a private right of action under § 10(b) or the other provisions of the 1934 act, because the specific liabilities created by §§ 9(e), 16(b) and 18 do not cover all the variegated activities with which that act is concerned. But it is quite another thing to add an implied remedy under § 17(a) of the 1933 act to the detailed remedies specifically created by §§ 11 and 12. The 1933 act is a much narrower statute. It deals only with disclosure and fraud in the sale of securities. It has but two important substantive provisions, §§ 5 and 17(a). Non-compliance with § 5 results in civil liability under § 12(1). Faulty compliance results in liability under § 11. And § 17(a) has its counterpart in § 12(2). It all makes a

---

**2.** A number of district courts have, however, done such an analysis and arrived at a similar conclusion. *See, e.g., Hill v. Der,* 521 F.Supp. 1370 (D.Del.1981); *Ingram Industries, Inc. v. Nowicki,* 502 F.Supp. 1060 (E.D.Ky.1980).

rather neat pattern. Within the area of §§ 5 and 17(a), §§ 11 and 12 (unlike §§ 9(e), 16(b) and 18 of the 1934 act) are all-embracing. This is not to say that the remedies afforded by §§ 11 and 12 are complete. But the very restrictions contained in those sections and the differences between them ... make it seem the less justifiable to permit plaintiffs to circumvent the limitations of § 12 by resort to § 17(a). Particularly is this so in view of the fact that § 11, together with the statute of limitations in § 13, was actually tightened in the 1934 amendments to the Securities Act.

3 L. Loss, *Securities Regulation,* 1785 (2d ed. 1961).

To imply a private cause of action under section 17(a) would be to create judicially a broader remedy than that expressly provided by Congress in sections 11 and 12 of the Securities Act of 1933. *See Redington,* 442 U.S. at 571–72, 99 S.Ct. at 2486–87, *TAMA,* 444 U.S. at 19–21, 100 S.Ct. at 246–248. We conclude, therefore, on the basis of the language of the statute, its legislative history, and the statutory context within which it appears that Congress did not intend that a private right of action be implied under section 17(a).

### IV. The Scope of Section 10(b) Private Remedies

We find that plaintiffs have a private right of action under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), for conduct for which section 12(2) of the Securities Act, 15 U.S.C. § 77*l*(2), provides an express remedy. The language and legislative history of section 10(b) show no congressional intent to limit the scope of that section. Furthermore, Congress has never acted to modify the scope of the judicially implied private 10(b) remedy. We, therefore, conclude that Congress intended that a section 10(b) remedy be permitted even where another section of the federal securities acts provides an express remedy so long as permitting the 10(b) remedy does not nullify the express remedy.

Defendant Rex Railways asserts that there is no implied right of action under section 10(b) and rule 10b–5 where plaintiff has complained of conduct for which Congress has provided an express remedy in another section of the federal securities law. When considering a rule 12(b) motion to dismiss for failure to state a claim upon which relief can be granted, we must assume that the allegations in the complaint are true. *McLain v. Real Estate Board of New Orleans,* 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980). All plaintiffs in these actions allege that they relied upon certain material misrepresentations made to them by defendants, that these misrepresentations were material to plaintiffs' decisions to purchase the securities offered for sale and sold by defendants, and that defendants either knew or should have known that the representations were false. They also allege that defendants omitted certain material facts necessary to make the statements not misleading. Plaintiffs further allege that defendants intended these misrepresentations and omissions to deceive plaintiffs in order to induce them to purchase the securities. These allegations clearly describe conduct actionable under both section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and section 12(2) of the Securities Act, 15 U.S.C. § 77*l* (2).

The Supreme Court has expressly reserved decision on whether an implied action under section 10(b) will lie for conduct for which express private remedies are provided in other sections of the federal securities acts. *Hochfelder,* 425 U.S. at 211 n. 31, 96 S.Ct. at 1389 n. 31; *Blue Chip Stamps,* 421 U.S. at 752 n. 15, 95 S.Ct. at 1933 n. 15. The Court, however, has issued a writ of certiorari in *Herman & MacLean v. Huddleston,* —— U.S. ——, 102 S.Ct. 1766, 72 L.Ed.2d 173 limited to the question of whether an implied remedy exists under either section 10(b) of the Securities Exchange Act of 1934 or section 17(a) of the Securities Act of 1933 for purchasers of securities who have an express remedy un-

der section 11 of the Securities Act.[3] —— U.S. ——, 102 S.Ct. 1766, 72 L.Ed.2d 173 (1982). We have not been asked by the parties to postpone our decision until the Supreme Court decides this issue, nor do we believe such a delay is either necessary or appropriate. The Supreme Court has limited its consideration to the relationship between sections 10(b) and 11; the instant cases raise the question of the relationship between sections 10(b) and 12(2).

It is well-settled that purchasers have an implied right of action under section 10(b) and rule 10b–5. *Hochfelder,* 425 U.S. at 196, 96 S.Ct. at 1382. The issue thus is not whether such a right should be implied but whether that right exists when there are other express remedies available to plaintiff under the federal securities laws. *Huddleston v. Herman & MacLean,* 640 F.2d 534, 542 (5th Cir.1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 1766, 72 L.Ed.2d 173 (1982); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 553 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). We nevertheless believe that we must address this issue in light of the recent Supreme Court decisions discussed earlier in which the Court laid out the principles that courts must use in determining whether a private right of action should be implied. In particular, we note the Court's emphasis on congressional intent in establishing limitations on the section 10(b) private right of action. *Hochfelder,* 425 U.S. at 201–11, 96 S.Ct. at 1384–89; *Blue Chip Stamps,* 421 U.S. at 752–54, 95 S.Ct. at 1933–34 and *passim.*

Three Circuits have employed an analysis based upon *Cort* and its progeny in determining whether the presence of express remedies in the federal securities acts requires a finding that there is no implied remedy under section 10(b). In *Ross,* 607 F.2d at 556, the Second Circuit held that a cause of action may be implied under section 10(b) and rule 10b–5 for conduct also actionable under section 18 of the Securities Exchange Act, 15 U.S.C. § 78r. The court reasoned that permitting such an action under section 10(b) would not nullify the express remedy provided in section 18 because to prevail in a 10(b) action, a plaintiff must plead and prove scienter. Although, as the court noted, scienter might be found to be a necessary element of a section 18 claim, *citing Hochfelder,* 425 U.S. at 211 n. 31, 96 S.Ct. at 1389 n. 31, the court concluded that under existing law, a plaintiff bringing a 10(b) action has a far more substantial pleading and proof burden than a plaintiff with a section 18 claim. 607 F.2d at 555–56.

The Fifth Circuit used similar reasoning in holding that a private cause of action could be implied under section 10(b) despite the overlap with express remedies provided in sections 11 and 12(2) of the Securities Act, 15 U.S.C. §§ 77k and *l*(2).[4] *Huddleston,* 640 F.2d at 540–43. The court pointed out that scienter is a prerequisite to a section 10(b) action but not to section 11 and section 12(2) actions. A 10(b) action thus requires proof of additional facts, thereby imposing on a 10(b) plaintiff a higher burden of proof than that imposed on plaintiffs acting pursuant to sections 11 and 12(2). *Id.* at 542.

The Circuit Court for the District of Columbia has also held that the existence of express remedies under sections 11 and 12(2) of the Securities Act does not preclude an implied right of action under section 10(b). *Wachovia Bank & Trust v. National Student Marketing,* 650 F.2d 342 (D.C.Cir. 1980), *cert. denied,* 452 U.S. 954, 101 S.Ct. 3098, 3099, 69 L.Ed.2d 965. The court, however, reached this result by applying the four-factor *Cort* analysis rather than by considering whether allowing an implied remedy under 10(b) would nullify express remedies provided elsewhere. *Id.* at 350–53. It also noted that despite many efforts,

---

**3.** This case was consolidated with No. 81–1076, in which the question to be addressed by the Supreme Court is whether the clear and convincing standard is the appropriate burden of proof in private 10b–5 actions.

**4.** Plaintiff also alleged violations of section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), but the court's discussion and holding are limited to section 10(b) and rule 10b–5.

successful and unsuccessful, to amend the securities laws, Congress has never rejected the judicially developed cause of action under section 10(b). *Id.* at 351.

Using the analysis it had developed in *Huddleston,* the Fifth Circuit recently held that a plaintiff has no implied right of action under section 10(b) for stock price manipulation encompassed by § 9 of the Securities Exchange Act, 15 U.S.C. § 78i. *Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149 (5th Cir.1982). The court reasoned that because the standard of proof under section 9 is more stringent than that under rule 10b–5, permitting recovery under section 10(b) would nullify the express remedy provided by section 9. *Id.* at 1160–65. The court found support for its conclusion in the legislative history of the federal securities acts and Supreme Court interpretation of section 10(b) and rule 10b–5. *Id.* at 1165–69.

We recognize that district courts have split on the issue of whether an implied remedy will lie under section 10(b) where the plaintiff has an express remedy under some other section of the securities acts, even where they have explored the issue in light of recent Supreme Court decisions. *Compare McFarland v. Memorex Corp.,* 493 F.Supp. 631, 653–55 (N.D.Ca.1980) *with Beecher v. Able,* 435 F.Supp. 397, 411–12 (S.D.N.Y.1977). Nevertheless, we find the reasoning of the *Ross, Huddleston,* and *Wachovia* courts persuasive.

The Supreme Court's development of a more stringent standard for implying private causes of action and its focus on congressional intent in establishing limitations on the 10(b) right of action indicates that the standard developed in *Cort* and its progeny should be applied to the issue of whether a section 10(b) action lies where a plaintiff has an express remedy. The ultimate question thus is what Congress intended.

■ The starting point for considering congressional intent is a comparison of the language of the pertinent sections and judicial interpretation of that language. Rule 10b–5, enacted pursuant to section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. It is black letter law that to make out a private claim under section 10(b), a plaintiff must show a misstatement or omission of material fact made with scienter—that is, the intent to deceive, manipulate, or defraud—on which the plaintiff relied that proximately caused his injury. *See Huddleston,* 640 F.2d at 543 and cases cited therein. Reliance is presumed once materiality is proved.

■ Section 12(2) of the Securities Act, 15 U.S.C. § 77*l*(2), which creates an express private remedy, provides:

Any person who—

(2) offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security

from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

A plaintiff need not prove scienter to recover in a 12(2) action; negligent conduct by the defendant suffices. *Wachovia,* 650 F.2d at 356; *Wertheim & Co. v. Codding Embryological Sciences, Inc.,* 620 F.2d 764, 767 (10th Cir.1980). Further, a plaintiff need not show reliance in order to recover under section 12(2). *Sanders v. John Nuveen & Co., Inc.,* 619 F.2d 1222, 1225 (7th Cir.1980). *See generally* 3 L. Loss, *Securities Regulation,* 1699–1705 (2d ed. 1961) and 1969 Supp.

Comparison of section 10(b) with section 12(2) clearly indicates that although the same conduct may be actionable under both statutes, a plaintiff who brings a 10(b) action must satisfy a far more stringent requirement if he is to prevail. Thus, we conclude that permitting a 10(b) action does not nullify the express remedy provided in section 12(2).

We further find that such a result is not inconsistent with congressional intent as revealed by legislative history. *See Wachovia,* 650 F.2d at 351–52. Our examination focuses not on whether a private right of action is implied in section 10(b) but on the scope of that right when there are overlapping remedies. Because the legislative history of section 10(b), which was enacted after section 12(2) of the Securities Act, is silent as to congressional intent with respect to the scope of the 10(b) implied remedy, we must look for expressions of intent to deny such a remedy. *TAMA,* 444 U.S. at 18, 100 S.Ct. at 246.

The legislative history created at the time section 10(b) was enacted provides no evidence of an intent to limit section 10(b). On the contrary, that section was described by Thomas Corcoran, a primary spokesman for the drafters, as a "catch-all clause to prevent manipulative devices." Hearings on H.R. 7852 and H.R. 8720 before the House Committee on Interstate and Foreign Commerce, 73d Cong., 2d Sess., 115 (1934), quoted in *Hochfelder,* 425 U.S. at 202–03, 96 S.Ct. at 1385–86. Given this view of section 10(b) as a catchall, we believe it appropriate to allow a 10(b) action despite the availability of an express remedy where, as is the case here, to do so would not nullify the express remedy.

This result is also consistent with the Supreme Court's analysis last term of the Commodities Exchange Act. Like the CEA, the Securities Act of 1933 and the Securities Exchange Act of 1934 have been periodically subjected to successful and unsuccessful efforts at amendment. Just as an implied private right of action for damages had been judicially recognized under the CEA for many years, so a private right of action under section 10(b) has been judicially recognized since 1946. *Curran,* 102 S.Ct. at 1839–40. The section 10(b) implied right of action was thus part of the context in which Congress acted when it considered amendments to the federal securities acts. The fact that despite these opportunities for modification, Congress "left intact the statutory provision under which the federal courts had implied a cause of action is itself evidence that Congress affirmatively intended to preserve that remedy," *Curran,* 102 S.Ct. at 1841, particularly where preserving the remedy would not nullify an express remedy.

 Defendant also maintains that the principle of statutory construction expressed in "expressio unius est exclusio alterius" requires a finding that provision of specific express remedies includes the exclusion of different remedies. The rule of exclusion, however, is a rule of construction, not a rule of law, and thus can be overcome by strong indicia of contrary congressional policy. *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 15, 101 S.Ct. 2615, 2624, 69 L.Ed.2d 435 (1981). We find that the language and judicial interpretation of section 10(b) of the Securities Exchange Act and section 12(2) of the Securities Act as well as the legislative history are strong indicia

that Congress intended to preserve the section 10(b) remedy where preservation would not nullify the express remedy of section 12(2).

We do not mean to suggest that the presence of an express remedy elsewhere in the securities acts has no limiting effect on implied actions pursuant to section 10(b). We do assert that the analysis used here, taken primarily from that of the Fifth Circuit developed in *Huddleston,* 640 F.2d at 540–43, and expanded in *Chemetron,* 682 F.2d at 1157–70, is the proper approach to determining whether the presence of an express remedy in the federal securities acts precludes the assertion of an implied cause of action under section 10(b). Our holding thus is limited. We find that an implied cause of action under section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and rule 10b–5, 17 C.F.R. 240.10b–5, lies for conduct that is also actionable under section 12(2) of the Securities Act, 15 U.S.C. § 77*l*(2).

## V. Statute of Limitations

■ Defendant Rex Railway asserts finally that the actions should be dismissed as barred by the statute of limitations. We find that the statute of limitations defense does not appear conclusively from the face of the complaints. Accordingly we cannot grant defendant's motion on the grounds that the actions were not timely filed.

■ Our task in considering a Rule 12(b) motion to dismiss is to determine whether it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). When an affirmative defense is raised in a motion to dismiss, the test is whether the complaint includes allegations of fact that effectively vitiate the ability to recover. In other words, a 12(b) motion to dismiss on the basis of an affirmative defense can be granted only where the defense appears clearly on the face of the complaint. *McNally v. American States Insurance Co.,* 382 F.2d 748 (6th Cir.1967); Wright & Mil-

ler *Federal Procedure and Practice: Civil* § 1357 and cases cited therein.

Having found that section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) provides no implied right of action, we need consider only whether the complaints conclusively reveal that plaintiffs' claims under section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) are barred by the statute of limitations. Section 10(b) does not contain a statute of limitations. Courts thus must determine which state statute of limitations best serves the purposes of the federal securities acts. *Hochfelder,* 425 U.S. at 210 n. 29, 96 S.Ct. at 1389 n. 29.

Defendant insists that the law of New Jersey applies, relying upon an affidavit attached to his memorandum in support of his motion which demonstrates that the purchase agreement provides that it is to be governed by the law of New Jersey (doc. 7). Rule 12(b)(6), Fed.R.Civ.P., provides that if matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and evaluated under the standards of Rule 56, Fed.R.Civ.P. It is well-settled that the court has the discretion to decide whether or not to exclude extraneous evidence and if the material is excluded to dispose of the motion under the standards of the 12(b)(6) dismissal. Advisory Committee Notes to the 1946 Amendment to Rule 12; *Ware v. Associated Milk Producers, Inc.,* 614 F.2d 413 (5th Cir.1980). If the matters outside the pleadings are considered, the court must treat the motion as one for summary judgment. *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972).

It is obvious that summary judgment is not appropriate at this stage of the litigation, and thus we decline to consider defendant's affidavit. Nevertheless, even if we were to consider the affidavit. Nevertheless, even if we were to consider the affidavit, we do not believe that the issue of which statute of limitations governs is a matter of New Jersey law. "[T]he law of limitations of the *forum* State is followed [in 10(b) actions] as in other cases of judi-

cially implied remedies." *Hochfelder,* 425 U.S. at 210 n. 29, 96 S.Ct. at 1389 n. 29 (emphasis added). Consequently, we would be required to look to the statute of limitations provided by Ohio securities law even if we were to consider defendant's affidavit.

The issue is whether to apply Ohio's Blue Sky two-year statute of limitations, O.R.C. § 1707.43, or the four-year statute of limitations applicable to common-law fraud, O.R.C. § 2305.09(C). Defendant Rex Railways asserts that the appropriate question is which state statute of limitations applies where a plaintiff/purchaser would have a cause of action under the appropriate state Blue Sky law, adding that the Sixth Circuit has not decided the precise issue. That court has nevertheless provided us with some guidance. Our Court of Appeals has held in a section 10(b) action that Ohio's four-year period of limitations for common-law fraud best effectuates the purposes of the federal securities law. *Nickels v. Koehler Management Corp.,* 541 F.2d 611 (6th Cir.1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977). However, we note that the Sixth Circuit subsequently held that the Kentucky two-year Blue Sky statute of limitation rather than the five-year period available in common-law fraud actions applied in a 10(b) action. *Herm v. Stafford,* 663 F.2d 669, 677–79 (6th Cir. 1981). In *Herm,* however, the court reasoned that the basis for using the longer statute of limitations is to give the individual with the federal securities claim at least as long as one with a state securities claim would have; under Kentucky law, the Blue Sky Law is the exclusive state remedy for fraud in the sale of securities. *Id.* at 678. A plaintiff with an Ohio securities claim is apparently not limited to his Blue Sky remedy, but may bring his claim as one for common-law fraud. Thus under the rationale of *Herm,* Ohio's four-year period of limitations for common-law fraud provided in O.R.C. § 2305.09(C) continues to be the most appropriate statute of limitations for 10(b) actions.

■ Although state law provides the applicable statute of limitations, federal law determines when the statute begins to run. *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Herm,* 663 F.2d at 682. In a securities action, the statute of limitations begins to run when the alleged fraud is or should have been discovered. *Herm,* 663 F.2d at 682.

The complaints in these actions were filed at various times during August, 1982. None of the complaints state when the alleged sales or contracts for sale took place. All of the complaints assert that plaintiffs discovered the fraud when their investments failed to return sufficient funds to cover the mortgage payments and management fees, but they do not specify the date of discovery. Thus, we cannot conclude on the basis of the complaints alone that the actions were not filed within the four-year period allowed by O.R.C. § 2305.09(C).

■ Although we believe that the four-year statute of limitations for common-law fraud provided by O.R.C. § 2305.09(C) rather than the two-year statute of limitations provided by Ohio's Blue Sky statute, O.R.C. § 1707.43, governs, we note that even under that more stringent standard, we could not conclude from the complaints alone that the actions were not timely filed. That statute provides:

> No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of the sale of contract for sale made in violation of Chapter 1707 of the Revised Code, shall be brought *more than two years after the plaintiff knew, or had reason to know,* of the facts by reason of which the actions of the person or director were unlawful, *or more than four years from date of such sale or contract for sale, whichever is the shorter period.*

O.R.C. § 1707.43 (emphasis added). Thus the two-year Blue Sky statute of limitations begins to run from the date the fraud is discovered up to a maximum of four years from the sale or contract for sale. The complaints do not allege the date when the fraud was discovered, merely that it was discovered sometime subsequent to the sales

of the securities. It is thus conceivable that plaintiffs can prove that they discovered the alleged fraud within two years prior to filing these lawsuits, and that the sales occurred within four years of bringing this litigation. Accordingly, we find that even if Ohio's Blue Sky statute were found to provide plaintiffs with their sole state remedy for fraud in the sale of a security and thus, under the reasoning of *Herm*, its statute of limitations must be applied to section 10(b) actions, the affirmative defense does not appear on the face of the complaint and thus we cannot grant defendant's motions to dismiss.

### VI. Conclusion

To reiterate, we find that plaintiffs have no cause of action under section 17(a) of the Securities Act, 15 U.S.C. § 77q(a). Plaintiffs have, however, asserted a cause of action under section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5. Furthermore, the complaints do not allege facts which on their face allow us to conclude that the actions are barred by the statute of limitations. Accordingly, we hereby deny defendant's motions to dismiss.

SO ORDERED.