Argued and submitted July 11, reversed and remanded with instructions November 16, 1983, reconsideration denied January 6, petition for review denied January 24, 1984 (296 Or 351)

## SOUTH SOUND NATIONAL BANK,
*Appellant,*

*v.*

## CITIZENS VALLEY BANK,
*Respondent - Third-Party Plaintiff,*

### (81-2342; CA A27077)

672 P2d 1198

Paul J. De Muniz, Salem, argued the cause for appellant. With him on the briefs was Garrett, Seideman, Hemann, Robertson & De Muniz, P. C., Salem.

Dean M. Quick, Albany, argued the cause for respondent - third-party plaintiff. With him on the brief was Weatherford, Thompson, Brickey & Powers, P.C., Albany.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

This appeal concerns the timeliness of the dishonor of two worthless checks by the Albany Branch (Albany) of Citizens Valley Bank (Citizens). The trial court found the dishonor timely and granted Citizens' cross-motion for summary judgment. On appeal, South Sound National Bank (South Sound) contends that the dishonor was not timely, because it did not meet the "midnight deadline" prescribed by ORS 74.3020.

On June 22, 1981, third-party defendant Van Dyken drew two checks in the amount of $11,000 and $4,500 on his account at Albany. The checks were deposited in his account with South Sound. South Sound cleared the checks through the Portland Branch of the Federal Reserve Bank. On June 24, 1981, Federal Reserve transferred the checks to Associated Computer Services, Inc. (ACS). By written agreement, ACS provides check processing and accounting services for the ten branches of Citizens.

By 10 p.m. on June 24, ACS had received all of the Albany credits accumulated during the banking day. Some time after 10 p.m. debits in the form of checks and credits in the form of deposits were posted by ACS to Albany's customer accounts. At the same time, ACS prepared a list of unposted items or problem checks. The two checks in question were drawn on a closed account and appeared on the unposted list.

After the data processing, ACS sends checks, computer disks and the unposted item report to Citizens Valley Bank Service Center (Service Center), which is responsible for reviewing and auditing data received from ACS. It received the checks and unposted items list on the morning of June 25. The unposted items list was delivered to the Albany Branch before 10 a.m. The branch requested the checks from the Service Center, and they were delivered to the branch in the afternoon. On June 26, the checks were dishonored and returned to the Service Center. The Service Center then returned the checks to Federal Reserve.

ORS 74.3020(1) provides:

"In the absence of a valid defense such as breach of a presentment warranty pursuant to ORS 74.2070(1), settlement effected or the like, *if an item is presented on and*

*received by a payor bank the bank is accountable for the amount of:*

"(1) *A demand item* other than a documentary draft whether properly payable or not *if the bank,* in any case where it is not also the depositary bank, *retains the item beyond midnight of the banking day of receipt without settling for it or,* regardless of whether it is also the depositary bank, *does not pay or return the item or send notice of dishonor until after its midnight deadline; * * *.*" (Emphasis supplied.)

ORS 74.1040(1)(h) defines "midnight deadline" as:

" "* * * midnight on [a bank's] next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later."

Under ORS 74.3020(1), a payor bank is liable to pay the check if the bank, after presentment, does not settle for, pay, return, or send notice of dishonor before the midnight deadline.

South Sound argues that the time period for Albany, as the payor bank, to pay or dishonor the checks began when they were received by ACS on June 24. The period for dishonor would have ended at midnight on June 25, and return of the checks June 26 was untimely.

In *South Sound Nat'l Bank v. First Int. Bank,* 65 Or App 553, 672 P2d 1194 (1983), we held that the midnight deadline count began when the checks were received for processing at the payor bank's off-premises data processing center.[1] ACS performs the same bookkeeping and accounting functions as did First Interstate's own data processing center. The issue is whether the status of ACS as an independent contractor and the bank's Service Center's responsibility to oversee the work distinguishes this case from *First Int. Bank.*

In that case, we found that the purpose of the midnight deadline is to encourage the prompt return of checks. "[T]o permit delay of the beginning of the running of the midnight deadline would have the effect of allowing the payor bank to unilaterally decide when the deadline would begin to run by the simple device of choosing the time to

---

[1] On appeal Citizens concedes that the period began to run when the checks were received by its own Service Center.

forward the check to the branch." *South Sound Nat'l Bank v. First Int. Bank., supra* 65 Or App at 558, *quoting Central Bank of Alabama v. Peoples Nat. Bank,* 401 So2d 14 (Ala 1981).

■■ Our reasoning is the same whether or not the data processing center is an independent contractor. There should be no legal distinction between payor banks which perform essential bookkeeping and accounting functions on their own premises and those which perform such functions off their premises. *South Sound Nat'l Bank v. First Int. Bank, supra* 65 Or App at 559. When the steps necessary for a payor bank to determine whether to honor a check are performed by a data processing center, it is irrelevant that the center is their own operation or that the services are performed under contact. *See Capital City First Nat. Bank v. Lewis State Bank,* 341 So2d 1025 (Fla App 1977) (bookkeeping and accounting functions performed off site pursuant to agreement).

■ The bookkeeping and accounting functions performed by ACS effectively made ACS an integral part of each Citizens branch served for the purposes of the Uniform Commercial Code. Therefore the dishonor time began to run when ACS received the checks on June 24, and the period for dishonor or notice of dishonor ended midnight on June 25. Dishonor on June 26 was untimely.

Reversed and remanded for entry of judgment for plaintiff.