**Daniel P. RIEDEL, et al., Plaintiffs,**

**v.**

**ACUTOTE OF COLORADO, a Limited Partnership, et al., Defendants.**

**No. C2–88–1194.**

United States District Court, S.D. Ohio, E.D.

Sept. 5, 1991.

Randall W. Knutti and Robert W. Trafford, Porter Wright Morris & Arthur, Columbus, Ohio, for plaintiffs.

Luigia Tenuta, Dublin, Ohio, for Acutote of Colorado, Acutote Inc., and David Westin.

William K. Root and Frederick Resch, Resch & Root, Dublin, Ohio, for Versatile Inv., David Cohen and Lyle Preest.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court on the motion of plaintiffs Daniel P. Riedel and Richard Zborowski for partial summary judgment against defendants Versatile Investment Planners, Inc. (hereinafter VIP), I. David Cohen, and Lyle W. Preest. (Plaintiff Barry J. Greenberg, whose suit # C2-89-324 was consolidated with the present suit, has not joined in seeking partial summary judgment). Plaintiffs made this motion in accordance with Federal Rules of Civil Procedure 56(a) and 56(d). This motion was filed October 31, 1990.

## FACTS

Plaintiffs Riedel and Zborowski brought this action against defendants VIP, Cohen, and Preest, as well as defendants Acutote, Inc., Acutote of Colorado Limited Partnership (hereinafter Partnership) and Davis A. Westin. Plaintiffs allege that the defendants violated the following statutes:

(1) Section 12(1) of the Securities Act of 1933 (15 U.S.C. § 77*l* (1)) (by selling unregistered securities which are not exempt from registration requirements);

(2) Ohio Revised Code sections 1707.43 and 1707.44 (by selling unregistered securities which are not exempt from registration requirements);

(3) Section 12(2) of the Securities Act of 1933 (15 U.S.C. § 77*l* (2)) (by material mis-statements and omissions in prospectus); and

(4) Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and corresponding rule 10b-5 (17 C.F.R. § 240.-10b-5) (by using modes of interstate commerce or the mails to commit securities fraud). Plaintiffs seek partial summary judgment on these claims.

In addition, plaintiffs allege the following violations, for which partial summary judgment is not being sought:

(1) Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a));

(2) Federal Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961 *et seq.*) (re. defendants Acutote and Westin);

(3) Conspiracy to violate RICO (re. defendants Acutote and Westin); and

(4) Common law fraud.

Acutote had a number of contracts with racetracks to handle their parimutuel betting operations. The Acutote Limited Partnership was to acquire these contracts and distribute the income to the partners. In June 1987, Acutote (managing general partner) and Westin (general partner) proposed sales of ten units of limited partnership interest in the Partnership for $27,000 each.

That same month the Partnership prepared a "Confidential Memorandum" offering these ten units for sale starting June, 1987 and closing September 8, 1987. All ten units were to be sold; if not, none of the units would be sold. Seven racing contracts to be assigned to the Partnership were indicated. However, two of the contracts were canceled during July and August and a third contract was in default, no payments having been made by the closing date. These adverse developments were never reflected in the Confidential Memorandum.

After the offering had closed, the Partnership repurchased the four units of Akilla Misali, an investor who had changed his mind as to purchasing limited partnership

interests. The Partnership then sought new investors for these units. In February and March of 1988, plaintiffs purchased three of these units. The Confidential Memorandum given to plaintiffs, though, did not mention the canceled/defaulted contracts. It also did not mention the Partnership's heavy borrowing from VIP and VIP-related entities nor the intended use of the new investors' funds. Subsequently, plaintiffs demanded a refund of their money, but defendants refused. Plaintiffs filed their complaint November 10, 1988, and their amended complaint December 15, 1989. They filed their motion for partial summary judgment on October 31, 1990.

Regarding their conduct concerning the sales of the units of limited partnership interest, Preest and Cohen admit the following in their answer to the amended complaint: (1) They did not disclose the Partnership's loans from VIP & VIP-related entitles (Answer to Amended Complaint, para. 12); (2) They did not disclose the "specific disposition of investor funds" (Answer to Amended Complaint, para. 13); (3) The contract cancellations and breach were "material adverse developments" of which defendants were legally obligated to inform potential investors (Answer to Amended Complaint, para. 10; *see also* Amended Complaint, para. 23); (4) Information on the contract cancellations and breach was never incorporated into the Confidential Memorandum (Answer to Amended Complaint, para. 10; *see also* Amended Complaint, para. 23); and (5) Neither VIP nor Preest is a licensed securities dealer or salesman in Ohio (Answer to Amended Complaint, para. 9).

In their response to plaintiffs' motion for partial summary judgment, (hereinafter Defendants' Response) Preest and Cohen make two arguments: (1) They did not know about the contracts' cancellations and, hence, did not know that the Partnership's income would fall short of the projections in the Memorandum (Defendants' Response, pp. 5–6); (2) The loans from VIP & VIP-related entities were used in the same manner as investor funds and did not change the Partnership's financial position, so failure to disclose that investor funds would be used to repay the loans is not misrepresentation (Defendants' Response, pp. 4–5). In addition, defendants mention that the law firm of Baker and Hostetler prepared the Confidential Memorandum, although they make no arguments as to attorney liability (Defendants' Response, pp. 2–3).

## STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citing *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943)). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In essence, the inquiry is whether the evidence presented a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

Such an inquiry necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits. As a result, the Court must view the evidence presented through the prism of the sub-

stantive evidentiary burden. Rule 56(e) therefore "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file', designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2550.

In *Banks v. Rockwell International North American Aircraft Operations*, 666 F.Supp. 1053 (S.D.Ohio 1987) (Graham, J.), this district enunciated the importance of granting summary judgments in appropriate situations by stating as follows: "Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 1056 (citing *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1); *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512).

Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. Having discussed the Rule 56 standard of review, the Court now turns to the merits.

## LAW AND ANALYSIS

### I. *Section 12 of the Securities Act of 1933*

The main purpose of the Securities Act of 1933 consists of protecting investors by requiring sellers to publish "material information" necessary for buyers to make "informed investment decisions." *Pinter v. Dahl*, 486 U.S. 622, 638, 108 S.Ct. 2063, 2074, 100 L.Ed.2d 658 (1988) (citing *SEC v. Ralston Purina Co.*, 346 U.S. 119, 124, 73

S.Ct. 981, 984, 97 L.Ed. 1494 (1953); *A.C. Frost & Co. v. Coeur D'Alene Mines Corp.*, 312 U.S. 38, 43 & n. 2, 61 S.Ct. 414, 417 & n. 2, 85 L.Ed. 500 (1941)). Section 12 (15 U.S.C. § 77*l*) reads as follows:

Any person who—

(1) offers or sells a security in violation of section 77e of this title, or

(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

### A. *Sellers Under Section 12*

Under section 12 of the Securities Act, a "seller" is broadly defined to include those who solicit offers to purchase. *Pinter*, 486 U.S. at 643, 108 S.Ct. at 2076. "Buyers" and "sellers" have the same respective meanings in both parts of section 12. *Id.* at 642, 108 S.Ct. at 2076. Even if they do not actually transfer title, persons commonly thought of as "ones 'from' whom the buyer 'purchased'" are "sellers" under this statute. *Id.* at 644, 108 S.Ct. at 2077; *see also Mercer v. Jaffe, Snider, Raitt and Heuer, P.C.*, 713 F.Supp. 1019, 1024 (W.D.Mich.1989), *aff'd* 933 F.2d 1008

(6th Cir.1991). As such, brokers and other agents of the seller are considered "sellers." *Pinter*, 486 U.S. at 644–46, 108 S.Ct. at 2077–78; *see also Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 493 (6th Cir. 1990).

Not included by the statute are those who merely give "gratuitous advice" or professionals, such as attorneys or accountants, whose participation is confined to providing professional services. *Pinter*, 486 U.S. at 647, 651, 108 S.Ct. at 2078, 2080. This is so "because, quite obviously, buyers commonly do not say that they purchased securities from lawyers or law firms that helped to prepare promotional material or offering statements." *Mercer*, 713 F.Supp. at 1024. The mere fact that an attorney worked on a prospectus does not make him a "seller" under the securities laws. *E.g., Abell v. Potomac Insurance Co.*, 858 F.2d 1104 (5th Cir.1988), *vacated on other grounds sub nom. Fryar v. Abell*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989). Accordingly, no "specific duty to the public [exists] which the securities laws impose upon attorneys." *Id.* at 1133. Absent such a duty, "lawyers are [not] required to tattle on their clients.... To the contrary, attorneys have privileges not to disclose." *Abell*, 858 F.2d at 1133 (quoting *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 497 (7th Cir.1986)). Without a duty to disclose, a law firm has "no fiduciary duty to breach." *Abell*, 858 F.2d at 1133. Thus, imposing section 12 liability on attorneys through the use of the "substantial factor test," which is concerned with the entire securities transaction instead of being limited to the sales aspect, runs contrary to statutory language. *Id.*, 486 U.S. at 651, 108 S.Ct. at 2080 (noting the "deficiency of the substantial-factor test"); *see also Mercer*, 713 F.Supp. at 1024 ("In light of this criticism, [the substantial-factor test] is no longer good law") (disapproving of the use of the substantial factor test in *Davis v. Avco Financial Services, Inc.*, 739 F.2d 1057 (6th Cir.1984), *cert. denied*, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 381 (1985), *cert. denied*, 472

U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 727 (1985)).

Thus, if a person successfully solicits a sale and is at least somewhat motivated by his own or the securities owner's financial interests, he is deemed to be a "seller." *Pinter*, 486 U.S. at 647, 108 S.Ct. at 2078. Likewise, a person who took a " 'substantial role' in persuading or seducing the purchasers into buying the securities" is a "seller." *Craighead*, 899 F.2d at 493.

A plaintiff filing suit under section 12 has the equitable remedy of rescission available. *Deckert v. Independence Shares Corp.* 311 U.S. 282, 288–89, 61 S.Ct. 229, 233, 85 L.Ed. 189 (1940); *see also Randall v. Loftsgaarden*, 478 U.S. 647, 655, 106 S.Ct. 3143, 3148, 92 L.Ed.2d 525 (1986); *Davis*, 739 F.2d at 1068. Damages are limited to "recovery of the consideration paid less income received or damages if the claimant no longer owns the security." *Deckert*, 311 U.S. at 288, 61 S.Ct. at 233.

### B. Materiality Under Section 12 and Section 10(b)

To meet the materiality requirement, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (standard of materiality in context of rule 14a–9). The Supreme Court has "expressly adopt[ed] the *TSC Industries* standard of materiality for the § 10(b) and Rule 10b–5 context." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32, 108 S.Ct. 978, 983, 99 L.Ed.2d 194 (1988); *see also SEC v. Washington County Utility District*, 676 F.2d 218, 225 (6th Cir.1982) (an omitted fact is material if a "substantial likelihood" exists "that a reasonable [investor] would consider it important" (citing *TSC Industries*, 426 U.S. at 449, 96 S.Ct. at 2132); *Arber v. Essex Wire Corp.*, 490 F.2d 414, 418 (6th Cir.1974) (an omitted fact is material if "a reasonable man would

have attached importance to the undisclosed facts in determining his choice of action" (citing *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir.1968), *cert. denied sub nom. Coates v. SEC*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969)), *cert. denied* 419 U.S. 830, 95 S.Ct. 53, 42 L.Ed.2d 56 (1974). Information as to a company's "financial condition, solvency, and profitability" is clearly material. *Securities and Exchange Commission v. Blavin*, 760 F.2d 706, 711 (6th Cir.1985) (citing *SEC v. Murphy*, 626 F.2d 633, 653 (9th Cir.1980)).

This standard of materiality applies generally throughout the securities laws. *See Levinson*, 485 U.S. at 231, 108 S.Ct. at 983 (the Supreme Court "explicitly has defined a standard of materiality under the securities laws"); *TSC Industries*, 426 U.S. at 445–46 & n. 8, 96 S.Ct. at 2130–31 & n. 8 (citing a number of cases applying "the conventional tort test of materiality" to "various sections of the securities laws").

■ Summary judgment is appropriate "[o]nly if the established omissions are 'so obviously important to an investor that reasonable minds cannot differ on the question of materiality.'" *Id.* at 450, 96 S.Ct. at 2132 (quoting *Johns Hopkins University v. Hutton*, 422 F.2d 1124, 1129 (4th Cir.1970)). Nonetheless, a defendant's denial that the inaccurate information is material does not create a "genuine issue" as to the information's materiality. *Blavin*, 760 F.2d at 711.

## II. *Lack of Registration Under Section 12(1)*

■ Section 12(1) deals with offers or sales of securities in violation of the registration requirements. 15 U.S.C. § 77l (1). To recover, a plaintiff need only show that the securities were unregistered. In short, "[t]he registration requirements are the heart of the Act, and § 12(1) imposes strict liability for violating those requirements." *Pinter*, 486 U.S. at 638, 108 S.Ct. at 2074.

## III. *Omission of a Material Fact Under Section 12(2)*

■ Section 12(2) deals with offers or sales of securities utilizing a prospectus which omits or misrepresents a material fact. 15 U.S.C. § 77l (2). To recover under section 12(2) of the Securities Act, a plaintiff does not have to show scienter or reliance. *Davis*, 739 F.2d at 1068; *Basile v. Merrill Lynch, Pierce, Fenner & Smith*, 551 F.Supp. 580, 590 (S.D.Ohio 1982). In contrast with a claim under section 10(b) of the Securities Exchange Act, negligence is sufficient. *Davis*, 739 F.2d at 1068. ("proximate cause approach" used); *Basile*, 551 F.Supp. at 590.

■ Once a person is deemed a "seller" under section 12(2), he bears "the burden of persuasion in establishing his lack of negligence." *Davis*, 739 F.2d at 1067. As such, "[t]he seller is exculpated if he proves that he did not know, or, in the exercise of reasonable care, could not have known of the untruth or omission." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 209 n. 27, 96 S.Ct. 1375, 1389 n. 27, 47 L.Ed.2d 668 (1976); *see also Davis*, 739 F.2d at 1068 ("defendant may escape by showing an exercise of ordinary care"). Factors to consider in determining whether a seller has exercised this standard of care consist of the following: (1) the degree of planning and promotional involvement, (2) access to information establishing the truth or falsity of representations, (3) relative skill level in ascertaining the truth, (4) pecuniary interest in the transaction's completion, and (5) the presence of a trusting relationship with the plaintiff. *Davis*, 739 F.2d at 1068. As such, actual knowledge by a defendant is not required.

## IV. *Section 10(b) of the Securities Exchange Act and Rule 10b–5*

Compared with section 12(2) of the Securities Act, recovery under section 10(b) of the Securities Exchange Act (15 U.S.C. § 78j) is more difficult. The statute reads as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5 (17 C.F.R. § 240.10b–5), which corresponds to section 10(b), reads as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

## A. Scienter

■ Section 10(b) requires a plaintiff to "show a misstatement or omission of material fact made with scienter ... on which the plaintiff relied that proximately caused his injury." *Basile,* 551 F.Supp. at 589; *see also Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1410 (6th Cir.1991) (page references not yet available—text in WESTLAW, ALLFEDS library, CTA file); *Molecular Technology Corp. v. Valentine,* 925 F.2d 910, 921 (6th Cir.1991). The standard of materiality under section 10(b) is consistent with that under other provisions of the securities laws. *See* discussion of materiality, *supra.*

Having the burden of proving scienter, a plaintiff "must prove that the defendant acted ... with intent to deceive, manipulate, or defraud." *Herman & MacLean v. Huddleston,* 459 U.S. 375, 382, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983); *see also Aaron v. SEC,* 446 U.S. 680, 691, 100 S.Ct. 1945, 1952, 64 L.Ed.2d 611 (1980). The "prevailing view" among the circuit courts is that reckless behavior is enough to constitute scienter. *See Huddleston,* 459 U.S. at 378 n. 4, 103 S.Ct. at 685 n. 4. The Sixth Circuit has adopted this position. *SEC v. Blavin,* 760 F.2d 706, 711 (6th Cir.1985); *Davis,* 739 F.2d at 1063; *Ohio Drill & Tool Co. v. Johnson,* 625 F.2d 738, 741 (6th Cir.1980); *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1025 (6th Cir.1979). Reckless behavior consists of "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Mansbach,* 598 F.2d at 1025 (citing *Sundstrand Corp. v. Sun Chemical Corp,* 553 F.2d 1033 (7th Cir.1977), *cert. denied sub nom. Meers v. Sundstrand Corp.,* 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977)); *see also Blavin,* 760 F.2d at 711; *Ohio Drill,* 625 F.2d at 741.

■ An investment advisor has "an affirmative duty of 'utmost good faith, and full and fair disclosure of all material facts,' as well as an affirmative obligation 'to employ reasonable care to avoid misleading' his clients." *SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 194, 84 S.Ct. 275, 284, 11 L.Ed.2d 237 (1963); *Blavin,* 760 F.2d at 711–12. Proof of negligent conduct alone, however, is insufficient for recovery of damages under section 10(b). *Huddleston,* 459 U.S. at 383, 103 S.Ct. at 687 (citing *Hochfelder,* 425 U.S. at 208–10, 96 S.Ct. at 1388–89).

## B. Reliance

■ Reliance is also an element of a rule 10b–5 claim. *Levinson,* 485 U.S. at 243, 108 S.Ct. at 989. However, "positive proof of reliance" is not required. *Id.; see also Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972) (in light of "failure to disclose, positive proof of reliance is not a prerequisite to recovery" under rule 10b–5). Once materiality is es-

tablished, reliance is presumed. *TSC Industries*, 426 U.S. at 447 n. 9, 96 S.Ct. at 2131–32 n. 9 ("positive proof of reliance is unnecessary when materiality is established"); *Molecular Technology* 925 F.2d at 918 ("In the case of omission or nondisclosure of material facts, the element of reliance ... may be presumed."); *Basile*, 551 F.Supp. at 589. Thus, "[t]he obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact." *Affiliated Ute*, 406 U.S. at 154, 92 S.Ct. at 1472 (citing *Chasins v. Smith, Barney & Co.*, 438 F.2d 1167, 1172 (2d Cir.1970)).

■ The standard remedy for section 10(b) violations consists of awarding damages, which are calculated by subtracting "the fair value" of what the plaintiff actually received from what he would have received without the fraud. *Randall v. Loftsgaarden*, 478 U.S. 647, 661–62, 106 S.Ct. 3143, 3151–52, 92 L.Ed.2d 525 (1986) (quoting *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 155, 92 S.Ct. 1456, 1473, 31 L.Ed.2d 741 (1972)). Whether rescission is available, and under what circumstances, is still an "unsettled" matter. *Id.*, 478 U.S. at 661, 106 S.Ct. at 3151. Some authority, though, exists for permitting rescission under this provision. *Id.* at 662, 106 S.Ct. at 3152 (citing L. Loss, Fundamentals of Securities Regulation 1133 (1983); *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976)).

■ To recover under section 10(b) and rule 10b–5, causation must be established. Establishing that the material omission (or misrepresentation) caused the plaintiff's injuries encompasses two aspects. One, the plaintiff must show his reliance on this omission/misrepresentation in deciding to invest ("transaction causation"). Two, he must show that this omission/misrepresentation "was in some reasonably direct or proximate way responsible for ([his] pecuniary) loss" ("loss causation"). *Murray v. Hospital Corp. of America*, 682 F.Supp. 343, 346 (M.D.Tenn. 1988), *aff'd*, 873 F.2d 972 (6th Cir.1989) (quoting *Campbell v. Shearson/American*

*Express, Inc.*, 829 F.2d 38 (6th Cir.1987) (text in WESTLAW, ALLFEDS library, CTA file)).

### C. Attorney Liability Under Section 10(b)

■ Attorneys are not usually liable under the federal securities laws. *See* section 12 discussion, *supra*. This is so because, normally, attorneys merely provide their professional services. *See Huddleston*, 459 U.S. at 386 n. 22, 103 S.Ct. at 689 n. 22. Nevertheless, section 10(b) applies to lawyers engaging in fraudulent conduct. *Id.* at 386–87 & n. 22, 103 S.Ct. at 689 & n. 22. As the Supreme Court has declared, "Section 10(b) is aptly described as a catch-all provision, but what it catches must be fraud. When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Chiarella v. United States*, 445 U.S. 222, 234–35, 100 S.Ct. 1108, 1117–18, 63 L.Ed.2d 348 (1980). As such, "[n]ot 'all breaches of fiduciary duty' ... come within the ambit of Rule 10b–5.... There must also be 'manipulation or deception.'" *Dirks v. SEC*, 463 U.S. 646, 654, 103 S.Ct. 3255, 3261, 77 L.Ed.2d 911 (1983) (quoting *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 472–73, 97 S.Ct. 1292, 1299–1300, 51 L.Ed.2d 480 (1977)).

■ Preparation of a prospectus constitutes participation in a securities sale which invokes section 10(b)'s anti-fraud provisions. *See, e.g., Molecular Technology*, 925 F.2d 910; *Moore v. Fenex, Inc.*, 809 F.2d 297 (6th Cir.1987), *cert. denied sub nom. Moore v. Frost*, 483 U.S. 1006, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987); *Mercer*, 713 F.Supp. 1019.

■ The scienter requirement is then met if an attorney knows of the misleading or omitted material information. *See Molecular Technology*, 925 F.2d at 921; *In re Rospatch Securities Litigation*, 760 F.Supp. 1239, 1249 (W.D.Mich.1991) (citing *SEC v. Frank*, 388 F.2d 486, 489 (2d Cir. 1968)); *Mercer*, 713 F.Supp. at 1025. The silence of a law firm or other professional entity, though, does not imply scien-

ter. *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 497 (7th Cir.1986). Without direct evidence or motive to engage in fraud, such an inference cannot be supported. *See, e.g., id.* (charges of fraud are "inconceivable" because a law firm and an accounting firm received no proceeds or fees from securities sales to plaintiff).

### V. *Sections 1707.43 and 1707.44 of the Ohio Revised Code*

■ Section 1707.44(C)(1) of the Ohio Revised Code prohibits sales of unregistered securities. This provision reads as follows:

(C) No person shall knowingly and intentionally sell, cause to be sold, offer for sale, or cause to be offered for sale, any security which comes under any of the following description:

(1) Is not exempt under section 1707.02 of the Revised Code, nor the subject matter of one of the transactions exempted in sections 1707.03, 1707.04, and 1707.34 of the Revised Code, has not been registered by description, coordination, or qualification, and is not the subject matter of a transaction that has been registered by description[.]

Section 1707.43 permits a buyer, at his option, to void a sale of securities which violated any part of Ohio's securities laws. The pertinent part of this provision is as follows:

Every sale or contract for sale made in violation of Chapter 1707 of the Revised Code is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person who has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to such purchaser, ... for the full amount paid by such purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision.

As section 1707.43 applies to anyone who "participated in or aided the seller in any way" in a sale violating Ohio's securities laws, this provision is much broader than the parallel federal provision in section 12(1). This wide-ranging application is typical of most states' securities laws. *See, e.g., Molecular Technology,* 925 F.2d at 920 n. 7 (most states' Blue Sky laws do not require scienter). Rescission is thus available if the buyer shows that the violation was one materially affecting the protective goals of the state's securities laws. *See Callahan v. Class One, Inc.,* 58 Ohio St.3d 76, 77, 567 N.E.2d 1036, 1037 (1991); *Pencheff v. Adams,* 5 Ohio St.3d 153, 154, 449 N.E.2d 1277, 1278 (1983); *Bronaugh v. R. & E. Dredging Co.,* 16 Ohio St.2d 35, 40–41, 242 N.E.2d 572, 576 (1968); *Roger v. Lehman Brothers Kuhn Loeb, Inc.,* 621 F.Supp. 114, 118 (S.D.Ohio 1985) (*citing Martin v. Steubner,* 485 F.Supp. 88, 97 (S.D.Ohio 1979), *aff'd,* 652 F.2d 652 (6th Cir.1981); *Mazza v. Kozel,* 591 F.Supp. 432, 435 (N.D.Ohio 1984)).

■ Trivial violations do not trigger this remedy. *Bronaugh,* 16 Ohio St.2d at 35, 242 N.E.2d at 573; *see e.g., Obenauf v. CIDCO Investment Services, Inc.,* 54 Ohio App.3d 131, 133–34, 561 N.E.2d 1070, 1073 (1990) (late filing of a form necessary for sales of registration-exempt securities did not materially affect the statute's protection). In addition, an attorney providing professional services is not liable under section 1707.43. O.R.C. section 1707.431(A) (exempting "[a]ny attorney ... whose performance is incidental to the practice of his profession"); *Leeth v. Decorator's Manufacturing, Inc.,* 67 Ohio App.2d 29, 34, 425 N.E.2d 920, 923 (1979) (if an attorney is a corporate officer and "performs the normal duties of an attorney for the corporation [, he] must participate in some other manner ... to be liable under R.C. 1707.43"); *In re Bell & Beckwith (McGraw v. Liberty Airlines, Inc.),* 89 B.R. 632, 645 (Bankr. N.D.Ohio 1988) (section 1707.431(A) is apparently "simply a codification of the holding in *Leeth* "), *dismissed,* 114 B.R. 475 (N.D.Ohio 1989). *See also* discussion of attorney liability under section 12 of the Securities Act and section 10(b) of the Securities Exchange Act, *supra.*

Sales of unregistered securities, though, are deemed to "materially affect[ ] the pro-

tection contemplated by [O.R.C. section 1707.44(C)(1)] and entitle[] a purchaser of unregistered securities to the relief" of rescission. *Callahan*, 58 Ohio St.3d at 77, 567 N.E.2d at 1037 (quoting *Pencheff,* 5 Ohio St.3d at 153, 449 N.E.2d at 1277); *see also Mark v. FSC Securities Corp.*, 870 F.2d 331, 337 (6th Cir.1989); *Roger,* 621 F.Supp. at 118. This is true even if the buyer initiated the sale. *Callahan,* 58 Ohio St.3d at 77, 567 N.E.2d at 1038. The Ohio Supreme Court noted that any interpretation which did not hold the seller strictly liable "would only serve to undermine the most fundamental purpose of the statute—protection of the public from the sale of unregistered securities." *Id.* 567 N.E.2d at 1037 (quoting *Pencheff,* 5 Ohio St.3d at 154, 449 N.E.2d at 1278).

### VI. *Defendants' Conduct Is Governed by Section 12, Section 10(b), and O.R.C. Section 1707.43*

The conduct of VIP, Preest, and Cohen is sufficient to invoke the remedies of section 12 and section 10(b)/rule 10b–5, as well as section 1707.43 of the Ohio Revised Code.

Acutote paid VIP $24,750 for consulting services, including financial projections and marketing activities. Deposition Exhibit # 3. As the sole stockholders and directors of VIP, Preest and Cohen took an active part in the operations of the corporation. Cohen Deposition, pp. 10–11, 16. As VIP's chairman, Cohen's responsibilities were to contact clients, "solicit" securities purchases, refer clients to Preest, and sell securities. Preest Deposition, pp. 31–33. Indeed, Cohen is a "registered representative through [a securities] broker/dealer." Cohen Deposition, p. 13. As vice-president, Preest's duties included marketing, promotion, and hiring/firing. Preest is also a "registered investment advisor," which permits his giving investment advice but not his selling securities. Preest Deposition, pp. 30–31.

Regarding Acutote's limited partnership sales, VIP's role consisted of "approaching prospects with an opportunity for limited partnerships, having a coordinating role perhaps in preparation of documents, suggesting an investment as fit or not fit for a particular investor, and otherwise facilitating the investment." Preest Deposition, p. 25.

VIP, Preest, and Cohen are thus "sellers" under section 12. They played a central role in successfully soliciting investors for Acutote's limited partnership interests. Their contract with Acutote gave them a financial motive for their activities, so their activities were not "gratuitous." Likewise, their activities were those which people commonly associate with sellers. Therefore, VIP, Preest, and Cohen constitute "sellers" under the statute. This conduct, then, also meets the "in connection with" requirement of section 10(b) and rule 10b–5. Similarly, the "participated in or aided" requirement of O.R.C. section 1707.43 was met by this conduct.

Conversely, the law firm of Baker and Hostetler is not a "seller" under section 12. The attorneys did not solicit any sales, nor do people normally think of attorneys as sellers of securities. The most that defendants can point to is Baker and Hostetler's preparation of the Confidential Memorandum. In light of the Supreme Court's repudiation of the "substantial factor test," Baker and Hostetler clearly does not qualify as a "seller" under section 12.

### VII. *Defendants Liability Under Section 12(1) of the Securities Act and Ohio Revised Code Section 1707.44*

Plaintiffs have pled that no registration statement regarding the limited partnership units were in effect. No evidence, from defendants or others, has contradicted this showing. Indeed, defendants do not even address this claim in their response to plaintiffs' motion for partial summary judgment. VIP, Preest, and Cohen are thus liable under section 12(1). The securities' lack of registration is thus uncontroverted. Therefore, VIP, Preest, and Cohen are held strictly liable under section 12(1), and plaintiffs are entitled to rescission of the sales of the limited partnership units. In the same manner, the non-registration violated O.R.C. § 1707.-

44(C)(1), and so plaintiffs may rescind the sales under O.R.C. § 1707.43.

### VIII. *Defendants Are Liable Under Section 12(2) and Section 10(b)*

#### A. *Materiality and Reliance*

■ As to materiality, defendants concede this issue as to the cancellation/breach of the income-producing contracts. This fact alone is enough to meet the materiality requirement of sections 12(2) and 10(b). In addition, the disposition of the investors' funds is material as it directly conerns the financial situation of the Partnership. Income flow and other matters affecting the financial situation of an investment are "obviously important to an investor." This showing of materiality as to the omitted information also creates the presumption of plaintiffs' reliance, which is an element of a section 10(b) claim.

#### B. *Negligence and Scienter*

■ In contrast, VIP, Preest, and Cohen cannot be exculpated by their lack of knowledge or inability to know through the exercise of reasonable care. Defendants' knowledge of plaintiffs' funds being used to pay off loans from VIP and VIP-related entitles and the nondisclosure of this information are unchallenged. Not only does this material omission constitute negligence under section 12(2), but this conduct also meets the recklessness standard of scienter under section 10(b). Furthermore, defendants have failed to demonstrate that they exercised reasonable care as to knowledge of the cancelled/breached contracts. Indeed, Cohen admits that he did nothing to verify the existence or status of the contracts, nor did he know of anyone else's efforts to do so. Cohen Deposition, pp. 45–46. Defendants' recklessness and negligence is accentuated in light of the following factors: (1) their central role in promoting and selling the limited partnership units, (2) their access to this information as consultants to Acutote and as sellers, (3) their expertise in evaluating this information, (4) their financial interest in the sales as creditors of the Partnership and sellers of the limited partnership units, and (5) a relationship of trust with the plaintiffs.

Therefore, plaintiffs are entitled to rescission under section 12(2). Plaintiffs are also entitled to an award of damages (or possibly rescission) under section 10(b). Because plaintiffs have pled that their limited partnership units are worthless, the remedy of rescission under the other provisions would equal or exceed section 10(b)'s award of damages.

### CONCLUSION

Plaintiffs are thus entitled to partial summary judgment against defendants VIP, Preest, and Cohen as to the following claims: (1) Section 12(1) of the Securities Act of 1933 (15 U.S.C. § 77*l*(1)); (2) Ohio Revised Code sections 1707.43 and 1707.-44(C)(1); (3) Section 12(2) of the Securities Act of 1933 (15 U.S.C. § 77*l*(2)); and (4) Section 10(b) (15 U.S.C. § 78j(b)) and rule 10b–5 (17 C.F.R. § 240.10b–5).

Accordingly, plaintiffs Riedel and Zborowski's Motion for Partial Summary Judgment on these claims against defendants VIP, Preest, and Cohen is hereby GRANTED. As such, plaintiffs are hereby granted rescission of the sales of the limited partnership interests in the amount of their purchase price of $75,000, plus interest.

IT IS SO ORDERED.