Ralph E. **LEAN,** Appellant–Defendant,

v.

**Charles D. REED and Paul A. Reinken,** Appellees–Plaintiffs,

**Galaxy Online, Inc., and Galaxy Internet, Inc.,** Appellees–Defendants.

No. 49A02–0602–CV–126.

Court of Appeals of Indiana.

Sept. 19, 2006.

---

Lynne D. Lidke, Michael B. Langford, Indianapolis, IN, Attorneys for Appellant.

Martin T. Fletcher, Sr., David E. Bailey, Fort Wayne, IN, Attorneys for Appellees.

## OPINION

HOFFMAN, Senior Judge.

Defendant–Appellant Ralph E. Lean appeals from the trial court's grant of summary judgment in favor of Plaintiffs–Appellees Charles D. Reed, Paul A. Reinken (the "purchasers") and Defendants–Appellees Galaxy Online, Inc. ("GOLI") and Galaxy Internet, Inc. We affirm.

Lean raises one issue for our review, which we restate as: Whether the trial court erred in entering partial summary judgment finding Lean liable under Ind. Code § 23–2–1–19(d) of the Indiana Securities Act.

On April 6, 2000, GOLI, a Canadian corporation, issued and sold shares of its common stock to the shareholders of Abacus Computer Services, Inc. ("Abacus") in exchange for their conveyance of their Abacus shares to GOLI. The purchasers were two of the Abacus shareholders who conveyed their shares to GOLI in exchange for GOLI common stock.

The GOLI stock was not registered under the Indiana Securities Act (hereinafter "the Act"), as is required by Ind.Code § 23–2–1–3. Furthermore, GOLI did not at the time of sale disclose to the purchasers that various stock options and GOLI stock had been acquired by GOLI officers, directors, consultants, and key executives. Such disclosure is required by Ind.Code 23–2–1–12(2).[1]

---

1. In pertinent part, Ind.Code § 23–2–1–12(2) states that it is unlawful for any person in connection with the offer, sale or purchase of any security, either directly or indirectly to

The purchasers filed suit against GOLI and its directors, including Lean. The suit was based on Ind.Code § 23–2–1–19(a), which states that a person who offers or sells a security in violation of the Indiana Securities Act, and who does not meet the burden of proof that the person did not know and in the exercise of reasonable care could not have known of the violation, is liable for that violation. The claim against Lean and the other directors was based upon Ind.Code § 23–2–1–19(d), which provides that a director of a corporation in violation of Ind.Code § 23–2–1–19(d) is liable jointly and severally with and to the same extent as the corporation.[2] Ind.Code § 23–2–1–19(d) further provides that a director may avoid liability if he "sustains the burden of proof that the [director] did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."

Subsequent to the filing of their complaint, the purchasers filed their joint motion for partial summary judgment, contending that Lean was *prima facie* liable under the Act. Stated differently, by showing that GOLI had sold unregistered securities and had failed to make material disclosures, the purchasers shifted the burden to Lean of showing that the defense set forth in Ind.Code § 23–2–1–19(d) applied. The trial court found that there was no material issue of fact pertaining to the defense and that Lean failed to establish his defense as a matter of law. Lean now appeals.

The purpose of summary judgment is to terminate litigation about which there is no factual dispute and which may be determined as a matter of law. *Ratcliff v. Barnes*, 750 N.E.2d 433, 436 (Ind.Ct.App. 2001), *trans. denied.* When reviewing the grant or denial of summary judgment this court applies the same standard as the trial court. *Id.* Summary judgment is appropriate only if the designated evidentiary material shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

In performing our analysis, we consider the pleadings and evidence sanctioned by Ind. Trial Rule 56(C) without determining weight or credibility. *Mehling v. Dubois County Farm Bureau Co-op. Ass'n*, 601 N.E.2d 5, 6 (Ind.Ct.App.1992). All doubts about the existence of facts or the reasonable inferences to be drawn therefrom are to be resolved in the nonmovant's favor, and this Court will carefully scrutinize the trial court's determination to assure that the nonmovant was not improperly denied his day in court. *Heck v. Stoffer*, 786 N.E.2d 265, 268 (Ind.2003).

■ The purchasers bore the initial burden to designate specific evidence to show that Lean was *prima facie* liable to them under Ind.Code § 23–2–1–19(d). Lean concedes that the purchasers met their initial burden when they showed that GOLI sold unregistered securities and failed to make material disclosures in its transaction with them. Given that concession, the burden of proof shifted to Lean to

"omit to state a material fact necessary in order to make the statements made in the light of circumstances under which they are made, not misleading[.]"

**2.** Specifically, Ind.Code § 23–2–1–19(d) refers to the liability of a "person" and the "director of the person." Under the Act, the term "person" means "an individual, a corporation, a limited liability company, a partnership, an association, a joint-stock company, a trust where the interests of the beneficiaries are evidenced by a security, an unincorporated organization, a government, or a political subdivision of a government." Ind.Code § 23–2–1–1(h).

demonstrate there was a genuine issue of fact as to his pleaded affirmative defense. *See Paint Shuttle, Inc. v. Continental Cas. Co.*, 733 N.E.2d 513, 519 (Ind.Ct.App. 2000), *trans. denied.*

Lean contends even though he failed to ask the questions that would have generated the knowledge of GOLI's wrongdoing, his explanation of why he failed to ask those questions, coupled with expert testimony that it was reasonable for him to rely on counsel, management, and the due diligence process, was sufficient to raise a question of material fact pertaining to the defense set forth in Ind.Code § 23–2–1–19(d). Lean argues that the trial court's grant of partial summary judgment has the effect of reading the words "reasonable care" out of the statute. Lean further argues that summary judgment was inappropriate because a trier of fact, in determining "reasonable care," would be entitled to consider (1) the aforementioned expert testimony pertaining to reliance upon counsel, management, and the due diligence process; (2) Lean's position as an outside director not involved in the day-to-day management of the company; (3) Lean's acquisition of knowledge pertaining to the sale at his first directors' meeting only thirty-eight days into his tenure as director; and (4) the consummation of the acquisition agreement between GOLI and the purchasers only three days after the directors' meeting. In summary, Lean contends that the issue is not whether he "could have known" of the deficiencies in the sale but whether "in the exercise of reasonable care could not have known" of these facts. Appellant's Brief at 15.

Indiana courts have not previously addressed the issue raised in this appeal, and the parties have cited cases from other jurisdictions. In *Everts v. Holtmann*, 64 Or.App. 145, 667 P.2d 1028 (1983), *rev. denied*, 296 Or. 120, 672 P.2d 1193 (1983), the principal case relied upon by Lean, investors filed suit against a corporation's directors on the basis that the directors failed to reveal pertinent information. One of the directors alleged that he was entitled to summary judgment because he reasonably relied on information from insiders. The Oregon Court of Appeals determined that such reliance was insufficient as a matter of law to immunize the director from liability. *Id.* at 1035. The court did, however, hold that whether a specific inquiry must be made depends on the facts in each case. *Id.* The court further held that the director's status as an "outsider without notice of any suspicious activity," should "go into the mix of facts to be presented to the trier of fact to determine what constitutes reasonable care...." *Id.*

In *Hines v. Data Line Systems, Inc.*, 114 Wash.2d 127, 787 P.2d 8 (1990), investors brought an action against the directors of a corporation on the basis that the directors should have informed them, as part of the stock transaction, of the brain aneurysms and operation performed upon the corporation's chief executive officer. The directors countered that the "reasonable care" defense does not impose upon directors a duty to investigate facts beyond their *actual* knowledge.[3] *Id.* at 18. After observing that the plain language of the affirmative defense provision requires something more than actual knowledge, the Washington Supreme Court stated that "[t]he defense is available only if [the director] 'did not know' and 'could not have known' of the existence of the liability producing facts." *Id.* The court further

---

**3.** Washington's "reasonable care" defense is identical to the defense stated in Ind.Code § 23–2–1–19(d).

stated that "[i]gnorance will be bliss only to the extent that the director can prove that even by the exercise of reasonable care he would have remained ignorant of the true state of affairs." *Id.* The court then held that a director "at a minimum, must apprise himself of facts reasonably within his grasp." *Id.* The court concluded that the statute "imposes upon directors the burden of affirmatively proving that in the exercise of reasonable care they could not have learned of [the chief executive officer's] remaining aneurysms." *Id.* at 19. Because it was unclear what the directors reasonably could have known about the chief executive officer, the court remanded for further action by the trial court. *Id.*[4]

 The *Hines* decision is consonant with the language of our statute. Ind. Code § 23-2-1-19(d) requires Lean to show that in the exercise of reasonable care he could not have known of the lack of registration and the undisclosed information. In other words, as expressed by the *Hines* court, Lean's ignorance will be bliss only to the extent that he can prove that even by the exercise of reasonable care he would have remained ignorant of the true state of affairs. By his admission, a single question to other directors would have provided Lean with salient knowledge about the transaction, and we conclude as a matter of law that Lean has failed to meet the burden set forth by statute. While the statute clearly indicates that some directors may not in the exercise of reasonable care be able to ascertain knowledge pertinent to a stock transaction, that is not the case here.

The trial court was correct in granting summary judgment in favor of the purchasers. Accordingly, we affirm.

CRONE, J., concurs.

BAKER, J., dissents with separate opinion.

BAKER, Judge, dissenting.

I respectfully dissent from the majority opinion. I must first depart from my colleagues' reliance on *Everts* and *Hines*, which emanate from two of our sister states. Although those opinions may be well reasoned and thoughtful, I believe that the more appropriate source of wisdom regarding the Indiana Securities Act is caselaw analyzing the statutory scheme on which our State's Act is based—the Federal Securities Act of 1933.

Indiana Code section 23-2-1-19, which sets forth the affirmative defense of reasonable care at issue herein, "is based upon Section 410 [now Section 509] of the Uniform Securities Act of 1956, which in turn is modeled after section 12 of the Federal Securities Act of 1933...." *Kirchoff v. Selby,* 686 N.E.2d 121, 128 (Ind.Ct. App.1997), *vacated in part on other grounds,* 703 N.E.2d 644 (Ind.1998). This relationship becomes apparent when we compare the affirmative defense set forth in the Indiana statute, which provides that the defendant has the "burden of proof that the person did not know and in the exercise of reasonable care could not have known of the violation," I.C. § 23-2-1-19(a), with that set forth in the federal statute, which provides that the defendant has the "burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission ...," 15 U.S.C. § 77l(a) ("section 12(2)"). In *Kirchoff* we said:

> the resemblance of the Uniform Securities Act and the Federal Securities Act is intended to '... make for an interchangeability of federal and state judi-

---

**4.** In *Robertson v. White,* 635 F.Supp. 851 (W.D.Ark.1986), Arkansas's "reasonable care" defense statute was interpreted in a manner similar to that expressed in *Hines.*

cial precedence in this very important area.' Louis Loss and Edward W. Cowett, *Blue Sky Law*, 391 (1958).

Further, it is generally accepted in Indiana that when a state statute is modeled after a federal statute, we may look to the cases interpreting the federal statute for guidance in interpreting the Indiana statute.

*Id.* (omission in original).

Turning, therefore, to opinions interpreting the reasonable care defense set forth in section 12(2) of the 1933 Act, it is apparent that whether a defendant has established that he could not have known of the violation had he exercised reasonable care is a question of fact that is rarely appropriate for disposition on summary judgment. *See, e.g., Sanders v. John Nuveen & Co., Inc.,* 619 F.2d 1222, 1228 (7th Cir.1980) (holding that what constitutes reasonable care under section 12(2) depends upon the circumstances). In *In re Software Toolworks, Inc. Securities Litigation,* the Ninth Circuit concluded that section 12(2)'s reasonable care defense is analogous to section 11's reasonable investigation defense. 50 F.3d 615, 621 (9th Cir.1994) (citing to 15 U.S.C. §§ 77k, –77l). The court then concluded that under both sections, "summary judgment is generally an inappropriate way to decide questions of reasonableness...." *Id.* More specifically, it held that

> reasonableness "becomes a question of law and loses its triable character if the undisputed facts leave no room for a reasonable difference of opinion." Accordingly, "reasonableness [is] appropriate for determination on [a] motion for summary judgment when only one conclusion about the conduct's reasonableness is possible."

*Id.* at 621–22 (quoting *West v. State Farm Fire & Cas. Co.,* 868 F.2d 348, 350–51 (9th Cir.1989)) (citations omitted) (alterations in original). From the outset, therefore, I am troubled that the instant case was disposed of by summary judgment.

As to the substance of section 12(2)'s reasonable care defense, the *Software Toolworks* court observed that in determining whether a defendant has met the burden of proving reasonable care, " 'the standard of reasonableness shall be that required of a prudent man in the management of his own property.' ... Thus, due diligence is, '[i]n effect, ... a negligence standard.' " 50 F.3d at 621 (quoting 15 U.S.C. § 77k(c) and *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 208, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)) (citations omitted).

It is apparent that the duty of reasonable care may include a duty to inquire into and/or investigate " 'whether the ever present possibility of fraud is in fact a reality....' " *Sanders,* 619 F.2d at 1228 (quoting *Sanders v. John Nuveen & Co., Inc. (Sanders I),* 524 F.2d 1064, 1071 (7th Cir.1975)). But as noted above, what a defendant must do to fulfill these duties is a matter of fact that depends upon the circumstances of the particular case. The Sixth Circuit has set forth a number of factors to assist an analysis of section 12(2)'s reasonable care defense:

> (1) the quantum of decisional (planning) and facilitative (promotional) participation, such as designing the deal and contacting and attempting to persuade potential purchasers,
>
> (2) access to source data against which the truth or falsity of representations can be tested,
>
> (3) relative skill in ferreting out the truth (for example, in this case [the defendant's] manager had comparatively greater skill in evaluating judgments based on subsidiary facts, since he performed a similar function in the process

of investigating the creditworthiness of borrowers),

(4) pecuniary interest in the completion of the transaction, and

(5) the existence of a relationship of trust and confidence between the plaintiff and the [defendant].

These are the circumstances that determine whether a person has exercised due care in this context [of a section 12(2) reasonable care defense].

*Davis v. Avco Fin'l Servs., Inc.*, 739 F.2d 1057, 1068 (6th Cir.1984); *see also, e.g., Riedel v. Acutote of Colo.*, 773 F.Supp. 1055, 1063 (S.D.Ohio 1991) (applying *Davis* factors).

Here, the record reveals that Lean assumed his position as an outside director of GOLI on February 18, 2000. A mere 38 days later, on March 28, 2000, Lean attended his first board of directors meeting, at which the GOLI board first discussed the proposed transaction with Abacus. On March 31, 2000, three days after the board meeting, the GOLI–Abacus transaction was consummated. Lean did not specifically inquire whether the registration of GOLI securities under the ISA had been completed properly because he assumed that GOLI management, legal counsel, and the due diligence process had taken care of the issue. Lean presented an expert who testified that determining whether a corporation's securities have been registered is not a detail that would normally rise to the level of inquiry by the board of directors in the ordinary course of conducting a board meeting.

Turning to the *Davis* factors, I reach the following conclusions based upon the record:

(1) Lean had no planning or promotional participation in this deal, inasmuch as he had only been an outside director for 38 days before the transaction was first proposed to the board by GOLI management;

(2) Lean likely had access to source data in the form of financial reports and people of whom he could have inquired regarding the securities' registration status;

(3) there is no evidence that Lean had special relative skill in ferreting out the truth, inasmuch as he was an outside director who had only been on GOLI's board for 38 days at the time the decision was made;

(4) it is unclear from the record whether Lean had a personal pecuniary interest in the transaction; and

(5) there is no evidence of a relationship of trust and confidence between Reid, Reinken, and Lean.

At the least, it is readily apparent from reviewing the circumstances of this case that there is an issue of fact regarding whether Lean exercised reasonable care. Moreover, although Lean admits that had he inquired into the registration of GOLI securities under the ISA he would have learned that the process had not been completed, I do not believe that we can determine as a matter of law that, to exercise reasonable care, Lean had a duty to so inquire. Lean was a brand-new outside director of GOLI with no prior involvement in the transaction. Under these circumstances, I believe that there is ample room for a reasonable difference of opinion.

I certainly do not mean to suggest that a director may remain in blissful or willful ignorance and thereby avoid liability under the Indiana Securities Act. I merely conclude, based upon the federal authorities cited above, that whether a defendant has proved the affirmative defense of reasonable care is nearly always a question of

fact. Although it is possible that a rare case could include undisputed facts that lead unerringly to only one conclusion regarding the defendant's exercise of reasonable care, I do not believe that this is that case. Thus, I would reverse the trial court's order and remand for trial on this issue.